J-A26019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRENDA SUE SMITH | |
| Appellant | No. 1452 MDA 2012 |

Appeal from the Judgment of Sentence February 9, 2012
In the Court of Common Pleas of Juniata County
Criminal Division at No(s): CP-34-CR-0000190-2010

BEFORE: BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.: **FILED DECEMBER 15, 2014**

Appellant, Brenda Sue Smith, appeals from the February 9, 2012 judgment of sentence, imposing life imprisonment without possibility of parole after a jury found her guilty of the first-degree murder of her son-in-law (Victim).[1] After careful review, we affirm.

The trial court summarized the factual history of this case as follows.

> Appellant was related to [V]ictim through her daughter, Carolyn Hockenberry. Carolyn and [V]ictim were married [and] had three children. Their relationship, according to Appellant, was quite turbulent and [V]ictim often abused Carolyn.
>
> At the time of the murder, the Hockenberrys lived in Juniata County, Pennsylvania, and Appellant lived in the American South-West. Prior to a scheduled visit, Appellant's husband purchased the murder weapon and performed an internet search to

---

[1] 18 Pa.C.S.A. § 2502(a).

learn how to properly transport a weapon on an airplane. Ultimately, Appellant brought the weapon to Pennsylvania and kept it hidden in her suitcase.

On the night of the murder, [September 15, 2010,] Appellant, Victim, Carolyn and the kids were all at home. Appellant and Victim got into a verbal altercation. Carolyn took the kids into the back bedroom where she sat with them and attempted to drown out the shouting by turning up the volume on the television set. During this altercation, Victim may have hit Appellant with a TV tray. Appellant retrieved her gun and loaded it, then instructed Carolyn to take the kids outside and get into the family's automobile. Appellant covered the gun with a towel, approached [V]ictim, and put a bullet in his head.

Appellant wiped the gun clean, and put both the towel and gun in [V]ictim's lap. She then joined Carolyn and the kids in the van and drove to the local Pennsylvania State Police barracks[, arriving at 8:15 p.m.,] to report the alleged earlier violence Victim inflicted upon Appellant, that is, the alleged assault with the TV tray. Appellant was taken to Lewistown Hospital so that she may have a bruise on her arm treated. It was while Appellant was at the hospital that Troopers investigated and found [V]ictim dead.

Appellant and Carolyn were informed of the Troopers discovery prior to leaving the hospital. As is standard in any death investigation, because Appellant and Carolyn admitted to seeing Victim last, Troopers asked them to come to the barracks to be interviewed. Appellant [accepted a] ride with the Troopers[]. She was not searched nor was she handcuffed, and upon arrival, she sat in the public lobby.

Appellant was asked to accompany a Trooper to an interview room. She was not guarded, and the door remained open. First, she explained that she and [V]ictim struggled for the gun and it accidentally

- 2 -

discharged. The Trooper asked Appellant to elaborate, and she was unable to do so. She then admitted to walking up behind [V]ictim and shooting him in the head.

At this point the interview was terminated and the Trooper left the room. He soon returned, and read Appellant her Miranda rights. She acknowledged that she understood her rights, and signed a waiver form. It was then that she provided a written statement admitting to the recent purchase of the weapon, her intention to shoot [V]ictim so that he would "leave [her] daughter alone," and covering the weapon with the towel so that he would not see it. She further explains in her statement that [Victim] was sitting in a computer chair when she shot him, but says that she pulled the trigger only because "I startled him and he startled me."

Trial Court Opinion, 1/4/13, at 1-3.

On September 16, 2010, the police charged Appellant with criminal homicide. After a preliminary hearing held October 14, 2010, the case was bound over to the Court of Common Pleas of Juniata County. On November 30, 2010, Appellant filed an omnibus pretrial motion, including a motion to suppress and a motion for change of venue or venire. In her motion to suppress, Appellant sought to exclude inculpatory statements made by her, allegedly obtained in violation of her constitutional rights. Appellant's Omnibus Pretrial Motion, 11/30/10, at 1-2. In her motion for change of venue or venire, Appellant averred that local media coverage of the case precluded the possibility of obtaining a fair and impartial jury in Juniata County. *Id.* at 2-3. A hearing on Appellant's omnibus pretrial motion was

held on January 11, 2011.[2]  Following the hearing, the trial court issued an order taking the motion for change of venue or venire under advisement in anticipation of "stipulations concerning exposure of the stories, as well as the content of the stories."  Trial Court Order, 1/11/11, at 1.  In a separate order that same day, the trial court deferred a decision on the suppression motion pending its review of the preliminary hearing transcript.[3]

On February 8, 2011, the trial court filed an order and memorandum, denying Appellant's suppression motion.  Also on February 8, 2011, the trial court related the following in its memorandum accompanying its order denying Appellant's motion for change of venue or venire.

> [W]e are not satisfied that, on the basis of the information brought to our attention during the course of the Pre-Trial Hearing and also on the basis of information brought to our attention by attempted stipulation concerning circulation of newsprint and radio media in Juniata County area, that an Order changing venue, at this time would be appropriate.
>
> Obviously, the issue of venue change is always deemed continuing and can be addressed pretrial upon further information being developed or, certainly, at a time when difficulty in empanelling a jury is encountered.

Trial Court Memorandum, 2/8/11, at 1.

---

[2] No transcript of this proceeding is contained in the certified record or in Appellant's reproduced record.

[3] The preliminary hearing transcript is not included in the certified record or Appellant's reproduced record.

The matter proceeded to jury selection on January 23, 2012, with trial held on January 30, 2012 to February 3, 2012.[4]   At the conclusion of the trial, the jury found Appellant guilty of first-degree murder.  On February 9, 2012, the trial court sentenced Appellant to life in prison.  On February 21, 2012, Appellant filed an omnibus post-sentence motion raising several issues, including those now on appeal.[5]   On May 17, 2012, the trial court granted Appellant's oral motion for a 30-day extension for decision on the post-trial motions.  *See* Pa.R.Crim.P. 720(B)(3)(b).  On July 20, 2012, the Juniata County Clerk of Courts entered an order notifying Appellant of the denial of her post-sentence motions by operation of law.  *See* Pa.R.Crim.P. 720(B)(3)(c).  On August 9, 2012, Appellant filed a timely notice of appeal.[6]

On appeal, Appellant raises the following issues for our consideration.

> 1.    [Appellant] made both oral and written statements to police during a custodial interrogation without being advised of her rights under ***Miranda v. Arizona***[, 384 U.S. 436 (1966)] and the Pennsylvania and United States Constitutions.  The statements were also made involuntarily as [Appellant] was so emotionally and psychologically distraught that the confession could not have been

---

[4] No transcript of the jury selection is contained in the certified record or in Appellant's reproduced record.

[5] We note that February 19, 2012 was a Sunday, and February 20, 2012 was a court holiday.  When calculating a filing period, weekends and holidays are excluded from this computation.  1 Pa.C.S.A. § 1908.  Therefore, Appellant had until February 21, 2012 to timely file any post-trial motion.

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

voluntary. Did the trial court commit an error of law in failing to suppress these statements and allowing their presentation at trial?

2. On September 17, 2010, [Appellant's] husband visited her at the Mifflin County Correctional Facility. Their conversation was recorded and the recording was admitted as evidence and played for the jury at trial in violation of spousal privilege. Did the trial court commit an error of law in allowing the admission of this extremely prejudicial and protected evidence?

3. The alleged crime occurred in a small, rural town in Pennsylvania and received extensive press coverage. Did the trial court commit an error of law in denying [Appellant's] request for Change of Venue?

Appellant's Brief at 5-6.

Appellant first contests the trial court's refusal to suppress her inculpatory oral and written statements that she claims were the product of custodial interrogation by the police, performed in violation of her Fifth and Fourteenth Amendment rights. *Id.* at 26. When reviewing a challenge to a trial court's denial of a suppression motion, we observe the following principles.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression

court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Ranson*, --- A.3d ---, 2014 WL 5018477 at *2 (Pa. Super. 2014), *quoting* **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 131 S. Ct. 110, 178 (2010) (citations, quotations and ellipses omitted).[7]

Preliminarily, we note that the certified record does not contain a transcript of the January 11, 2011 hearing on Appellant's omnibus pre-trial motion, including Appellant's motion to suppress. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the

---

[7] Our Supreme Court has recently clarified our scope of review when considering a challenge to a trial court's suppression ruling as it relates to "the extent of the record that the appellate court consults when conducting that review." **In re L.J.**, 79 A.3d 1073, 1080, (Pa. 2013). The Supreme Court held that such review is limited to the suppression hearing record, and "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing." **Id.** at 1085. Because prior cases held that a reviewing court could consider the trial record in addition to the suppression record, the Supreme Court determined that the more limited scope announced in **In re L.J.** would apply prospectively to cases where the suppression hearing occurred after October 30, 2013. **Id.** at 1088-1089. Instantly, the subject suppression hearing was held on January 11, 2011. Accordingly, our scope of review includes the trial testimony in this case.

materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (citation omitted), *appeal denied*, 916 A.2d 632 (Pa. 2007). The transcript is not included in the clerk of courts' list of record documents supplied to the parties. ***See*** Pa.R.A.P. 1911, 1931(d). Appellant has made no effort to assure inclusion of the missing transcript. ***See id.*** at 1926(b). "When the appellant … fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." ***Preston***, ***supra***. Because our scope of review for Appellant's suppression issue in this case includes the trial transcript, which is extensively cited by the parties, we decline to find waiver on this issue.

Appellant specifically contends the police subjected her to a custodial interrogation without first providing her with ***Miranda*** warnings. Appellant's Brief at 29. Appellant concedes that she was ***Mirandized*** prior to giving her written statement but claims the original taint precludes admission of the written statement as well. ***Id.*** The trial court determined that Appellant was not subjected to custodial interrogation "until after she admitted to walking up behind [V]ictim and shooting him in the head," after which she was advised of her ***Miranda*** rights. Trial Court Opinion, 1/4/13, at 10.

"In **Miranda** [], the United States Supreme Court declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation, so as to ensure that the defendant's right against compulsory self-incrimination is protected." **Commonwealth v. Martin**, --- A.3d ---, 2014 WL 4745782, *14 (Pa. 2014).

> The principles surrounding **Miranda** warnings are [] well settled. The prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. Thus, **Miranda** warnings are necessary any time a defendant is subject to a custodial interrogation. As the United States Supreme Court explained, the **Miranda** safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Moreover, in evaluating whether **Miranda** warnings were necessary, a court must consider the totality of the circumstances.

**Commonwealth v. Gaul**, 912 A.2d 252, 255 (Pa. 2006) (internal quotation marks and citations omitted), *cert. denied*, 552 U.S. 939 (2007).

> The law is clear that **Miranda** is not implicated unless the individual is in custody *and* subjected to interrogation.
>
> Police detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest … [T]he test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.

C*ommonwealth v. Snyder*, 60 A.3d 165, 170 (Pa. Super. 2013) (internal quotation marks and citations omitted, emphasis in original), *appeal denied*, 70 A.3d 811 (Pa. 2013).

> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring **Miranda** warnings.

**Commonwealth v. Baker**, 24 A.3d 1006, 1019-1020 (Pa. Super. 2011), *quoting* **Commonwealth v. Mannion**, 725 A.2d 196, 200 (Pa. Super. 1999) (citations omitted), *affirmed*, 78 A.3d 1044 (Pa. 2013).

Instantly, contrary to the trial court's finding, Appellant asserts the totality of the circumstances reveal she was subjected to a custodial interrogation. Appellant's Brief at 28.

> Appellant was clearly the object of an investigation which she was the focus. The officers wanted to question her because she was the last person to see [Victim] alive. There was nobody else that they were investigating. The investigation into how [Victim] died (suicide vs. homicide) focused on only two people: Carolyn and [Appellant]. The police never considered Carolyn a suspect; that only leaves one other person to investigate – [Appellant].

*Id.* Appellant further argues the following additional facts warrant a legal conclusion that Appellant's encounter with the police was custodial and coercive. Appellant was advised of Victim's death while she was leaving the hospital where she had been examined for injuries she attributed to an attack from Victim. *Id.* The police transported Appellant to the police station in a police vehicle. *Id.* at 28-29. The police refused her request to speak with her daughter before giving a statement. *Id.* at 28.

> If Appellant was led to believe that she couldn't even speak to her own daughter until providing a statement to police, had nowhere else to go, was asked to come to the police station even before leaving the hospital where she was receiving treatment for her injuries, and was transported to the police station in the back of a police cruiser rather than in the pastor's car with her daughter, it reasonably follows that Appellant would believe that she was not free to leave until providing a statement and therefore was the object of a custodial interrogation.

Appellant's Brief at 29. We disagree.

Initially, we note that "[b]eing the 'focus' of an investigation does not have talismanic qualities requiring the rendition of *Miranda* warnings. Rather, it is but one factor in deciding whether one is 'in custody.'" *In re V.H.*, 788 A.2d 976, 981 (Pa. Super. 2001), *appeal denied*, 808 A.2d 573 (Pa. 2002) (citations omitted), *see also Baker*, *supra*. Additionally, we conclude the facts support the trial court's determination that Appellant was not in custody at the time she made her initial inculpatory statement.

Those facts, viewed in the light most favorable to the Commonwealth, demonstrate that it was Appellant who first made contact with the police, claiming she was the victim of an assault by her son-in-law. N.T., 1/30/12, at 64-65. Appellant also acknowledged to the police that she heard shots fired when leaving her daughter's residence after the alleged assault. *Id.* at 67-68. Appellant was then taken in an ambulance to the hospital for assessment of her injuries from the assault, where police later located her and her daughter to notify them of Victim's death. *Id.* at 67, 82. The police advised Appellant and her daughter that they would like them to talk with the investigating officers at the police station.[8] *Id.* at 97-98. Appellant agreed but indicated she was not comfortable driving herself due to her unfamiliarity with the area. *Id.* at 98. She then accepted an offer by the police to drive her. It was 11:00 p.m. when she accepted the ride.[9] *Id.* at 83. No questioning took place while Appellant was in the police vehicle, and she was not restrained in any way. *Id.* at 83-84. Upon arriving at the police station, Appellant waited unattended and unconstrained in the public lobby. *Id.* at 84. At 12:02 a.m., Trooper Henderson took Appellant into the interview room to talk with her. *Id.* at 267. During the interview, the door

---

[8] The officers at the hospital were not involved in the investigation of Appellant's assault allegation or of Victim's death. They were merely performing the death notice to Victim's next of kin. N.T., 1/30/12, at 82.

[9] Appellant's daughter, with her children, waited for her pastor to arrive to drive them to the police station. N.T., 1/30/12, at 98.

to the room remained open, and Appellant was free to leave at any time. *Id.*

Initially, Appellant conceded her account of events, given at the time she made her complaint, was not accurate. She then provided a second version of events, describing an accidental shooting during her struggle to retrieve the gun from Victim, who had taken it from her luggage. *Id.* at 270-271. When asked about inconsistencies with the physical conditions found at the scene, Appellant gave a third version, describing an accidental shooting when Appellant tried to get the gun away from her when she brought it into the room where he sat at the computer. *Id.* at 271-272. When asked if this version was the truth, Appellant paused and then provided a fourth version, admitting to intentionally shooting Victim while he was seated at the computer. *Id.* at 272. At this point, it was 1:40 a.m., and Trooper Henderson stopped the interview, advised Appellant she was under arrest, and presented her with oral and written *Miranda* warnings. *Id.* at 273. Appellant executed a written waiver of those rights and proceeded to supply Officer Henderson with a written statement. *Id.*, Commonwealth Exhibit 19.

These facts do not portray anything close to coerciveness reaching the functional equivalent of an arrest. *See Snyder*, *supra*. Appellant initiated contact with the police, was not transported against her will, and was not subjected to displays of force, coercion, or aggressive investigative

techniques. ***See Baker***, ***supra***, ***see also Commonwealth v. Schwing***, 964 A.2d 8, 12 (Pa. Super. 2008) (holding that interview at police station where door to interview room was open, defendant was free to leave unaccompanied, and in the absence of other indicia of coercive police detention, defendant was not subjected to custodial interrogation) *appeal denied*, 989 A.2d 916 (Pa. 2009). Accordingly, we discern no error by the trial court in denying Appellant's motion to suppress.[10]

In her second issue, Appellant challenges the trial court's evidentiary ruling, permitting the Commonwealth to introduce into evidence a taped recording of a conversation she had with her husband on September 17, 2010, while he visited her in the Mifflin County prison after her arrest. Appellant's Brief at 33. We review a trial court's evidentiary rulings in accordance with the following standard.

_____

[10] Appellant advances an alternative argument that even if she was not subject to custodial interrogation, her statements should nevertheless have been suppressed "as [they] were made involuntarily." Appellant's Brief at 30. We deem this issue waived. Appellant's Rule 1925(b) statement addressed her challenge to the trial court's suppression ruling as follows. "The [t]rial [c]ourt committed an error of law when it admitted statements obtained from Appellant in violation of the requirements under ***Miranda*** []." Appellant's Rule 1925(b) Concise Statement of Errors Complained of on Appeal, 9/28/12, at 3, ¶ 5.e. Nowhere in her Rule 1925(b) statement does Appellant raise this alternative theory for suppression. Pennsylvania Rule of Appellate Procedure 1925(b) by its text requires that statements "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). Any issues not raised in accordance with Rule 1925(b)(4) will be deemed waived. ***Id.*** at 1925(b)(4)(vii). Our Supreme Court has held that Rule 1925 is a bright-line rule. ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011).

> The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 319 (Pa. 2014).

Instantly Appellant asserts the trial court erred in permitting the admission of a privileged communication between spouses in the absence of a valid waiver of the privilege.[11] Appellant's Brief at 33-34. We conclude Appellant misconstrues the privilege. The privilege for confidential marital communications is codified and provides as follows.

### § 5914. Confidential communications between spouses

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

---

[11] At trial and in her Rule 1925(b) statement, Appellant raised other grounds for her objection to the admission of the subject recording, including lack of discovery, and violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701. N.T., 1/30/12, at 18, 21, 235; Appellant's Rule 1925(b) Concise Statement of Errors Complained of on Appeal, 9/28/12, at 3, ¶¶ 5.b., 5.c. Appellant does not pursue those claims on appeal.

42 Pa.C.S.A. § 5914. The purpose behind the privilege has long been recognized by our Courts as grounded in the marital relationship.

> The spousal confidential communications privilege has its roots in common law and is based upon considerations of public policy, as in the case of husband and wife to preserve the peace, harmony and confidence in their relations. The Section 5914 privilege encompasses any communications which were confidential when made and which were made during the marital relationship. The determination of what constitutes a confidential communication depends upon whether the defendant has a reasonable expectation that the communication will remain confidential. As a general matter, the presence of third parties at the time the communication is made negates the confidential nature of the communication.

*Commonwealth v. Mattison*, 82 A.3d 386, 394 (Pa. 2013) (internal quotation marks and citations omitted), *cert. denied*, 135 S. Ct. 221 (2014). "Historically, the privilege was enacted to preserve marital harmony by encouraging free marital communication, allowing spouses to confide freely, and protecting the privacy of marriage." *Commonwealth v. Hunter*, 60 A.3d 156, 159 (Pa. Super. 2013).

> While communications between spouses are presumed to be confidential under section 5914, it has long been recognized that whether a particular communication is privileged depends upon its nature and character and the circumstances under which it was said. It is essential that the communication be made in confidence and with the intention that it not be divulged. Moreover, it is the burden of the party opposing the privilege to overcome the presumption of confidentiality.

*Id.* at 159-160 (citations and footnote omitted).

Instantly, the Commonwealth did not call Appellant's husband as a witness. Therefore, his competency as a witness under Section 5914 is not at issue. Playing the audio recording of Appellant's conversation with her husband does not implicate "the peace, harmony and confidence" of her marital relationship, because the information is not being disclosed by her spouse. *See Mattison*, *supra*. Section 5914 only addresses the competency of a spouse to disclose privileged marital communications made to that spouse. *See* 42 Pa.C.S.A. § 5914. Further, the trial court determined that Appellant had been advised that her communications in the prison were subject to recordation, which negated the confidential nature of her conversation with her husband. Trial Court Opinion, 1/4/13, at 4; *see Mattison*, *supra*. Accordingly, we conclude Appellant's second issue is devoid of merit.

In her final issue, Appellant alleges the trial court erred in refusing to grant her motion for change of venue or venire. Appellant's Brief at 36.

> A request for a change of venue or venire is addressed to the sound discretion of the trial court, which is in the best position to assess the atmosphere of the community and to judge the necessity of the requested change. Absent an abuse of discretion, the trial court's decision will not be disturbed.
>
> A change of venue becomes necessary when the trial court determines that a fair and impartial jury cannot be selected in the county in which the crime occurred. … Ordinarily[] a defendant is not entitled to a change of venue unless he or she can show that pre-trial

publicity resulted in actual prejudice that prevented the impaneling of an impartial jury. The mere existence of pre-trial publicity does not warrant a presumption of prejudice.

There is an exception to the requirement that the defendant demonstrate actual prejudice. Pre-trial publicity will be presumed to have been prejudicial if the defendant is able to prove that the publicity was sensational, inflammatory, and slanted toward conviction, rather than factual or objective; that such publicity revealed the defendant's prior criminal record, if any, or referred to confessions, admissions, or reenactments of the crime by the defendant; or that it was derived from official police and prosecutorial reports. Even if the defendant proves the existence of one or more of these circumstances, a change of venue or venire is not warranted unless he or she also shows that the pre-trial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated.

*Commonwealth v. Karenbauer*, 552 Pa. 420, 715 A.2d 1086, 1092 (1998) (citations omitted); *see also Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291, 314 (2011) ("[T]he pivotal question in determining whether an impartial jury may be selected is not whether prospective jurors have knowledge of the crime being tried, or have even formed an initial opinion based on the news coverage they had been exposed to, but, rather, whether it is possible for those jurors to set aside their impressions or preliminary opinions and render a verdict solely based on the evidence presented to them at trial.").

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1152-1153 (Pa. 2011).

We are constrained to find this issue waived. As noted in footnote two above, the transcript of the hearing on Appellant's omnibus pretrial motion is not contained in the certified record. Also, as noted, the trial court in denying Appellant's motion for change of venue or venire, as contained in her omnibus pretrial motion, recognized that the motion was "deemed continuing and can be addressed pretrial upon further information being developed or, certainly, at a time when difficulty in empanelling a jury is encountered." Trial Court Memorandum, 2/8/11, at 1. In her post-trial motion, Appellant asserts, "counsel for [Appellant] renewed their motion made pretrial for [c]hange of [v]enue/[c]hange of [v]enire." Appellant's Post-Trial Motion, 2/21/12, at 12, ¶ 50. Appellant indicates additional evidence was presented at that time. *Id.* at 12, ¶¶ 49, 51. Again, however, we note that no written renewal motion appears in the record and no transcript of the hearing on Appellant's motion is contained in the certified record or Appellant's reproduced record. Additionally there is no transcript of jury selection in the record.

Absent these critical materials, it is impossible for this Court to review the trial court's decision on this issue. The only materials before us are the articles attached to Appellant's Omnibus pretrial motion, which are dated over a year before trial. There is no basis upon which to evaluate the trial court's determination that the publicity was "not so extensive, sustained and persuasive without sufficient time between publication and trial for the

prejudice to dissipate[,] … [or] so pervasive that [] the community has been saturated with it." Trial Court Opinion, 1/4/13, at 11 (internal quotation marks and citation omitted). Further we cannot evaluate the prejudicial impact, if any, on jury selection. **See Chmiel**, **supra**.

As noted above, "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Preston**, **supra**. We conclude Appellant's failure to do so in this instance results in waiver of her challenge to the trial court's denial of her motions for change of venue or venire. **See id.**

Having determined all of Appellant's issues are either meritless or waived, we discern no error or abuse of discretion by the trial court in its disputed rulings. Accordingly, we affirm the February 9, 2012 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/15/2014

- 20 -