J-S16029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHELE RENAE HUNTER, | |
| Appellant | No. 1298 MDA 2014 |

Appeal from the Judgment of Sentence April 2, 2014
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001470-2011

BEFORE:  PANELLA, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 02, 2015**

Appellant, Michele Renae Hunter, appeals from the judgment of sentence entered on April 2, 2014, as made final by the denial of her post-sentence motion on July 1, 2014.  We affirm.[1]

This Court has previously outlined the factual background of this case as follows:

The four-year-old victim [("Victim")], is [Appellant's husband's ("Husband's")] biological son and [Appellant's] stepson.  While in [Appellant's] care, [Victim] suffered a severe brain injury

---

[1] This appeal is subject to dismissal in its entirety for Appellant's failure to comply with Pennsylvania Rule of Appellate Procedure 2135, which pertains to the length of briefs.  ***See*** Pa.R.A.P. 2101; ***Commonwealth v. Spuck***, 86 A.3d 870, 872–874 (Pa. Super. 2014), *appeal denied*, 99 A.3d 77 (Pa. 2014) and 109 A.3d 679 (Pa. 2015).  Rule 2135 requires that a brief longer than 30 pages contain a certification that it is less than 14,000 words.  Pa.R.A.P. 2135(d).  Appellant's 72-page brief lacks such a certification.  We exercise our discretion, however, and address the merits of this appeal.

(subdural hemorrhage), which led to cardiopulmonary arrest. The attending pediatrician on staff at the hospital where [Victim] was taken for treatment opined that there is a high probability that he will suffer lasting brain damage as a result of the injury.[2] The doctor also noticed that [Victim] had bruising over his entire back, consistent with hand prints, as well as on both arms and elbows. The doctor noted that child abuse was suspected.

Initially, [Appellant] told the police that on March 16, 2011, [Victim] had been upstairs and had fallen and reopened an old cut on his chin. She also told the officers that the boy had passed out in the bathroom, fell, and was non-responsive and had difficulty breathing. Days later, [Appellant] told the authorities that she had not given accurate information regarding how the child became injured and that, in fact, on March 15, 2011, she had pushed the child down, causing him to hit his head. She said that he became unresponsive and that she was unable to rouse him by carrying him to the bathroom and splashing cold water in his face. She said that the boy remained relatively unresponsive ("limp") throughout the day, falling in and out of periods of responsiveness. He was unable to move his limbs or sit up on his own.

[Appellant] also told the authorities that throughout the day on March 15, she began sending Husband texts at work, describing the boy's deteriorating condition over a 36–hour span. [Victim] was unable to walk or sit up on his own that evening and was put to bed by Husband and [Appellant], both of whom checked on him throughout the night. The next morning, March 16, [Victim] was able to walk with some assistance, although he continued to exhibit many of the physical symptoms from the day before. That evening, as Husband carried his son into his bedroom, [Victim] began gasping for breath and went into cardiac arrest. He was rushed to the hospital.

***Commonwealth v. Hunter***, 60 A.3d 156, 157–158 (Pa. Super. 2013)

(citations and certain footnote omitted).

_____

[2] In fact, at [Appellant's] bail hearing, [Victim]'s foster mother testified that he is unable to walk, talk, swallow food, communicate or play. He has a shunt in his head to drain fluid and a permanent feeding tube that goes into his stomach and intestines.

The relevant procedural history of this case is as follows. On September 19, 2011, Appellant was charged via criminal information with aggravated assault,[3] simple assault,[4] endangering the welfare of a child,[5] and conspiracy to endanger the welfare of a child.[6] On September 21, 2011, Appellant waived arraignment. On October 17, 2011, Appellant filed her omnibus pre-trial motion. That omnibus pre-trial motion only sought suppression of text messages Appellant sent Husband based upon the spousal privilege. It did not seek suppression of Appellant's confession. On February 14, 2012, the trial court denied the motion to suppress text messages. Appellant filed an interlocutory appeal and, on January 15, 2013, this Court affirmed. *Hunter*, 60 A.3d at 162.

On February 22, 2013, Appellant filed a second pre-trial motion to suppress. In this motion, Appellant alleged that her confession was given involuntarily. On February 27, 2013, the trial court denied the motion to suppress the confession as untimely. On March 20, 2013, Appellant filed a motion to reconsider. On April 18, 2013, the trial court conducted an evidentiary hearing on the motion to reconsider. On April 26, 2013, the trial court issued an order and opinion denying the motion for reconsideration.

---

[3] 18 Pa.C.S.A. § 2702(a)(1).

[4] 18 Pa.C.S.A. § 2701(a)(1).

[5] 18 Pa.C.S.A. § 4304(a)(1).

[6] 18 Pa.C.S.A. §§ 903, 4304.

On June 21, 2013, Appellant filed a motion *in limine* to exclude a video which showed a day in the life of Victim. On July 29, 2013, the trial court denied Appellant's motion *in limine*. On January 17, 2014, the Commonwealth filed a motion *in limine* to permit admission of prior bad acts evidence. On January 29, 2014, the trial court granted the Commonwealth's motion *in limine*. Trial commenced on February 4, 2014. On February 10, 2014, the jury found Appellant guilty of all charges. On April 2, 2014, the trial court sentenced Appellant to an aggregate term of 9 to 20 years' imprisonment.

On April 11, 2014, Appellant filed a post-sentence motion. On July 1, 2014, the trial court issued an order and opinion denying Appellant's post-sentence motion. This timely appeal followed. On July 29, 2014 the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On August 8, 2014, Appellant filed her concise statement. On August 26, 2014, the trial court issued its Rule 1925(a) opinion.[7]

Appellant presents seven issues for our review:

1. Did the trial court err by denying Appellant's motion for suppression of evidence filed on February 22, 2013 because said motion was timely when Appellant filed an interlocutory appeal and filed said motion the same day the record was remitted back to the trial court?

---

[7] We are grateful to the trial court for its thorough, 61-page Rule 1925(a) opinion. The trial court meticulously addressed each argument raised by Appellant and the Commonwealth and issued opinions contemporaneously with several of its rulings.

2. Did the trial court err by denying Appellant's motion to exclude proposed exhibits which sought to exclude the day in the life of [Victim] video because the probative value was outweighed by the prejudicial effect?

3. Did the trial court err by granting the Commonwealth's motion to admit other crimes evidence filed January 17, 2014?

4. Did the trial court err by ruling that merger did not apply to the aggravated assault and simple assault convictions because[,] as evidenced by the jury's question at 1:43 p.m.[,] the jury was led to believe that if the jury believed that Appellant pushed the Victim, the jury must convict the Appellant of both aggravated assault and simple assault because it was the same transaction or occurrence?

5. Did the trial court abuse its discretion by imposing an unduly harsh and unreasonable sentence when it imposed sentences in the upper end of the aggravated range and ordered all sentences to be served consecutively because[,] at the time of the offense[,] Appellant did not have a prior record, showed genuine remorse about the Victim's injuries, and was reluctant to call for assistance based on the repeated abuse she sustained during the marriage?

6. Did the trial court abuse its discretion when [it] denied Appellant's motion for judgment of acquittal because there was insufficient evidence to conclude that Appellant injured the Victim, or, in the alternative, if Appellant did injure the Victim, there was insufficient evidence to conclude that Appellant intended to cause the injuries the Victim sustained?

7. Was the jury's verdict so against the weight of the evidence as presented at trial so as to shock one's sense of justice because Appellant did not have the *mens rea* to cause the injuries the Victim sustained?

Appellant's Brief at 7-8 (complete capitalization and emphasis removed).

In her first issue, Appellant contends that the trial court erred by denying, as untimely, her February 22, 2013 motion to suppress her

confession. We conclude that this issue is waived. An issue not included in a concise statement, or fairly subsumed therein, is waived. *Newman Dev. Group of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 665 n.24 (Pa. Super. 2014) (*en banc*), *citing* Pa.R.A.P. 1925(b)(4)(vii).

In this case, Appellant's concise statement included the following issue:

> The trial court committed an error of law by denying [Appellant's] motion for evaluation and suppression of evidence filed on February 22, 2013 because [Appellant] was mentally incapable of providing such incriminating statements under the laws of Pennsylvania and the United States.

Concise Statement, 8/8/14, at 1. The issue, as framed in the concise statement, only dealt with the substantive contention that Appellant lacked the mental capacity to make the confession challenged in the February 22, 2013 motion. It did not address the timeliness reason for the denial of the motion. As noted above, in her statement of questions involved section of her brief, Appellant changed course and attacked the procedural reason for the denial of the motion to suppress. This change, however, was too late. Appellant should have sought leave of the trial court to amend her concise statement. By failing to amend her concise statement, Appellant waived consideration of the procedural reason for the denial of her motion to suppress.

In her second issue, Appellant contends that the trial court erred by denying her motion *in limine* to exclude the day in the life of Victim video.

She contends that the video was unduly prejudicial and, therefore, should have been excluded pursuant to Pennsylvania Rule of Evidence 403. This argument is also waived. As this Court has stated:

> Appellant has the duty to ensure that all documents essential to [her] case are included in the certified record. As this Court has previously stated, it is the obligation of the [a]ppellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal. If a document is not in the certified record then this Court cannot take it into account.
>
> * * *
>
> A failure by appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined.

*Commonwealth v. Manley*, 985 A.2d 256, 263 (Pa. Super. 2009), *appeal denied*, 996 A.2d 491 (Pa. 2010) (internal alteration, quotation marks, and citations omitted).

In *Manley*, the defendant argued that a photo array was unduly suggestive and, therefore, should have been excluded. *Id.* The defendant, however, failed to ensure that the photo array was included in the certified record. *Id.* Accordingly, this Court deemed that issue waived. *Id.* Similarly, in the case *sub judice,* Appellant failed to ensure that the day in the life of Victim video was included in the certified record. Without viewing the video, it is impossible for us to determine if the video were unduly prejudicial. Accordingly, Appellant's second issue on appeal is waived for failing to ensure that the video was included in the certified record.

In her third issue, Appellant contends that the trial court erred by admitting prior bad acts evidence. "When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Deeds v. Univ. of Pa. Med. Ctr.**, 110 A.3d 1009, 1017 (Pa. Super. 2015).

Pennsylvania Rule of Evidence 404(b) provides that:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.Evid. 404(b).

Consistent with Rule 404(b)(3), the Commonwealth moved *in limine* to admit Appellant's prior bad acts. The trial court granted the Commonwealth's motion *in limine* and admitted the following Rule 404(b) evidence. Nicholas Ranney, a caseworker with Franklin County Children and Youth Services, testified that on three occasions he visited Appellant,

Husband, and Victim. On each of those three visits, he observed bruising on Victim. **_See generally_** N.T., 2/6/14, at 163-179. Verne Wadel, another caseworker with Franklin County Children and Youth Services, testified that he also observed bruising on Victim during prior visits. **_Id._** at 190. Carol Fortney, a dental hygienist at Victim's dentist office, testified regarding bruising she observed at his appointment. **_See generally id._** at 132-143.

As noted in the trial court's thorough opinion, this case is similar to **_Commonwealth v. Sherwood_**, 982 A.2d 483 (Pa. 2009). In **_Sherwood_**, the defendant was charged with first-degree murder for the beating death of his four-year-old stepdaughter. **_Id._** at 486. The Commonwealth offered into evidence prior instances in which the defendant beat the victim. **_Id._** at 497. Our Supreme Court held that such evidence was properly admitted under Rule 404(b). **_Id._** at 497. Specifically, our Supreme Court held that prior bad acts evidence is admissible when the bad acts were critical to understanding the history of events related to the crime. **_Id._** Applying that rule, our Supreme Court held that the prior beatings were critical to understanding that the killing of the victim was not an accident or mistake and that the defendant possessed the requisite _mens rea_ for first-degree murder. **_See id._**

Likewise, in **_Commonwealth v. Powell_**, 956 A.2d 406 (Pa. 2008), the defendant was charged with first-degree murder for the beating death of a six-year-old child. The trial court admitted evidence that the defendant

abused the victim's mother and threw a glass of water at the victim. *Id.* at 419-420. Our Supreme Court reasoned that such evidence was properly used to show the relationship between the defendant, the victim, and the victim's mother. *Id.* at 419. Our Supreme Court also reasoned that throwing a glass of water at the victim was probative to the chain of abuse suffered by the victim at the hands of the defendant. *Id.* at 420.

The same is true in the case *sub judice*. "[Appellant] told the police that on March 16, 2011, [Victim] had been upstairs and had fallen and reopened an old cut on his chin. She also told the officers that the boy had passed out in the bathroom, fell, and was non-responsive and had difficulty breathing." *Hunter*, 60 A.3d at 158. Both at trial and on appeal, Appellant argues that any injury she caused was an accident. *E.g.* Appellant's Brief at 32. The Commonwealth could use the prior bad acts testimony to show why Appellant's original claim of accident was implausible and to prevent Appellant from resurrecting this story. In other words, the prior bad acts evidence was admissible to prove absence of mistake, lack of accident, ill-will, and/or malice.

Appellant contends that *Sherwood* and *Powell* are distinguishable from the case at bar "because in those cases the defendants were alleged to have caused blunt force trauma which ultimately led to the deaths of their victims." Appellant's Brief at 34. This is a distinction without a difference. Our Supreme Court's decisions in *Sherwood* and *Powell* did not turn on the

fact that the defendants were charged with murder.  Rather, they turned on the fact that at issue in each case was whether the defendant possessed the requisite *mens rea*.  Furthermore, both **Sherwood** and **Powell** relied upon the *res gestae* exception.[8]  That exception is likewise applicable in this case. The Commonwealth was entitled to show the complete history of the case, including Appellant's prior abuse of Victim.

The probative value of this prior bad acts evidence also outweighed the risk of unfair prejudice.  As noted above, this evidence was highly probative of whether Appellant accidentally caused Victim's injuries.  On the other hand, the risk of unfair prejudice was low.  "Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially."  **Parr v. Ford Motor Co.**, 109 A.3d 682, 696 (Pa. Super. 2014) (*en banc*) (internal quotation marks and citations omitted).  There were no images entered into evidence relating to the prior bad acts.  Instead, the only evidence offered was testimony regarding bruises observed on Victim.  Thus, there was a substantially reduced risk that the jury would focus on the prior bad acts evidence when it had before it extensive testimonial and documentary evidence relating to the crimes at issue in this case.  Furthermore, the trial court gave a detailed

---

[8] The *res gestae* exception allows "evidence of other acts to be admitted to tell the complete story." **Commonwealth v. Towles**, 106 A.3d 591, 603 (Pa. 2014) (internal alteration, quotation marks, and citation omitted).

limiting instruction which lessened the risk the jury would inappropriately consider the prior bad act evidence. ***See*** N.T., 2/4/14, at 194. Accordingly, we conclude that the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine* and admitting the prior bad acts evidence.

In her fourth issue, Appellant contends that the trial court erred by not merging her simple assault and aggravated assault convictions for sentencing. "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law[;]" therefore, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Orie***, 88 A.3d 983, 1020 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014).

> Section 9765 of the Sentencing Code provides that:
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." ***Commonwealth v. Raven***, 97 A.3d 1244, 1249 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014) (citation omitted).

As this Court has explained:

> The threshold question is whether Appellant committed one solitary criminal act. The answer to this question does not turn on whether there was a break in the chain of criminal activity. Rather, the answer turns on whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime. If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a volume discount on crime[.]

*Commonwealth v. Ousley*, 21 A.3d 1238, 1243 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (internal alteration, quotation marks, and citation omitted).

It is well-settled that the statutory elements of simple assault are included within the statutory elements of aggravated assault. *See Commonwealth v. Pettersen*, 49 A.3d 903, 907 (Pa. Super. 2012), *appeal denied*, 63 A.3d 776 (Pa. 2013). Thus, if Appellant's simple assault and aggravated assault convictions arose out of the same criminal act, they must merge for sentencing purposes. If, on the other hand, Appellant's simple assault and aggravated assault convictions arose out of separate criminal acts, they do not merge for sentencing purposes.

In *Commonwealth v. Jenkins*, 96 A.3d 1055 (Pa. Super. 2014), *appeal denied*, 104 A.3d 3 (Pa 2014), relying upon our Supreme Court's decisions in *Commonwealth v. Comer*, 716 A.2d 593 (Pa. 1998), *Commonwealth v. Anderson*, 650 A.2d 20 (Pa. 1994), and *Commonwealth v. Weakland*, 555 A.2d 1228 (Pa. 1989), this Court held that we must examine the charging documents when determining if two

convictions arose from a single criminal act. ***Jenkins***, 96 A.3d at 1060. Specifically, this Court held that, "[w]e must determine whether [the defendant's] actions . . . constituted a single criminal act, with reference to elements of the crime **as charged by the Commonwealth**." ***Id.*** (internal quotation marks and citation omitted; emphasis added).

In ***Jenkins***, the defendant was charged with robbery and simple assault. ***Id.*** at 1056. In the criminal information, the Commonwealth alleged that Jenkins committed robbery because he "assaulted [the victim] by punching him in the face causing a facial laceration and fractured jaw. [The victim] was forced to the ground, restrained and searched for personal belongings, which were stolen from [the victim]." ***Jenkins***, 96 A.3d at 1061 (citation omitted; emphasis removed). On the other hand, the Commonwealth alleged that Jenkins committed simple assault because "during the course of a robbery, [Jenkins and his codefendant] assaulted [the victim] causing a facial laceration that required stitches and a fractured left jaw." ***Id.*** (internal alterations and citation omitted).

This Court held that the criminal information charged Jenkins with simple assault and robbery for distinct criminal acts. ***Id.*** at 1062. Specifically, this Court held that the simple assault was charged for the punch to the face. ***Id.*** The criminal information, however, charged separately that Jenkins inflicted bodily injury upon the victim (an element of robbery) by forcing him to the ground and restraining him. ***Id.*** As the

criminal information charged Jenkins with simple assault and robbery for distinct criminal acts, this Court held that the two crimes did not merge for sentencing purposes. *Id.* This Court noted, however, that, "[h]ad the Commonwealth listed only the assaultive conduct that formed the basis of the simple assault charge against Jenkins at the robbery charge, we would conclude that Jenkins did not commit multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime." *Id.* (internal quotation marks and citation om

In this case, the criminal information charged as follows with respect to aggravated assault, "[Appellant], did, unlawfully attempt to cause serious bodily injury to another, or cause such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, to wit, [Appellant] did assault a [four-]year[-]old male, resulting in serious bodily injury." Information, 9/19/11, at 1. The criminal information charged as follows with respect to simple assault: "[Appellant], did, attempt to cause or intentionally, knowingly, or recklessly cause bodily injury to another, to wit, [Appellant] did cause physical harm to a [four-]year[-]old male, resulting in injuries." *Id.* at 3.

The plain language of the information makes evident that Appellant was charged with simple assault and aggravated assault for distinct criminal acts. In particular, the information only refers to a single serious bodily injury with respect to the aggravated assault charge, *i.e.*, the brain injury,

while it refers to multiple injuries with respect to the simple assault charge, *i.e.*, the bruises. The Commonwealth made this distinction clear during its closing argument. The Commonwealth argued, "[Appellant] told you already repeatedly from day one that she caused those bruises on his back, those fingerprint bruises they found on him when the paramedics got there, when the hospital saw him at the Hershey Medical Center. She admits that. That's what [s]imple [a]ssault is." N.T., 2/10/14, at 62. On the other hand, the Commonwealth discussed the brain injuries suffered by Victim when urging the jury to convict Appellant of aggravated assault. ***See id.*** at 54-61.

Appellant argues that she committed a single criminal act over a 36-hour time period. This argument is without merit. As noted above, there need not be a break in the chain of criminal activity in order for distinct criminal acts to have occurred. This Court's decision in ***Jenkins*** highlights this point. The distinct criminal acts may have occurred within seconds of one another, nevertheless they were distinct for purposes of our merger analysis. In ***Jenkins***, the defendant punched the victim, causing the victim to fall to the ground, and then restrained the victim on the ground while stealing his property. This Court found that constituted two separate criminal acts, the punch and the restraint on the ground. The same is true in the case *sub judice*. Appellant's act of pushing Victim to the ground and causing a severe brain injury (aggravated assault), was immediately followed by her grabbing him and causing bruising (simple assault). There

was no break in the chain of criminal activity, yet, pushing Victim and grabbing him and causing bruising on Victim's back were two distinct criminal acts.

Finally, Appellant contends that a question asked by the jury indicates that merger is appropriate. A question the jury asked, however, is not proof that the jury misapplied the law. We assume that the jury followed the law as instructed by the trial court. ***Commonwealth v. Coon***, 26 A.3d 1159, 1166 (Pa. Super. 2011), *appeal denied*, 40 A.3d 1233 (Pa. 2012) (citation omitted). Appellant does not argue that the trial court's instructions were incorrect. Instead, she merely argues that the fact the jury asked a question indicates that she committed one criminal act. As such, we conclude that the trial court correctly determined that the simple assault charge should not merge with the aggravated assault charged for the purposes of sentencing and Appellant's sentence was legal.

In her fifth issue on appeal, Appellant argues that her sentence is excessive. This issue challenges the discretionary aspects of Appellant's sentence. ***See Commonwealth v. Ali***, 2015 WL 926952, *21 n.4 (Pa. Super. Mar. 5, 2015). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of her sentence. ***See*** 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of her sentence. ***Id.***

As this Court has explained:

> To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014) (internal alteration and citation omitted). "Because Appellant neglected to include a separate Rule 2119(f) statement in [her] brief and because the Commonwealth has objected to this omission, we deem Appellant's challenge to be waived." *Id.*

In her sixth issue, Appellant contends that the evidence was insufficient to find her guilty. "Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). In reviewing a sufficiency of the evidence claim, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Thompson*, 106 A.3d 742, 756 (Pa. Super. 2014) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Haynes*,

2015 WL 1814017, *15 (Pa. Super. Apr. 22, 2015) (internal quotation marks and citation omitted).

Appellant first contends that there was insufficient evidence to conclude that she injured Victim. This argument is without merit. At trial, Appellant conceded that she told police during an interview that she was the individual who pushed Victim and caused his injuries. N.T., 2/7/14, at 84. The videotape of that confession was played for the jury. From this evidence alone, the jury could conclude that Appellant was the individual that caused Victim's injuries. All of Appellant's arguments to the contrary go to the weight of the evidence, and not its sufficiency.

Second, Appellant contends that, even if she did cause Victim's injuries, she did not have the requisite *mens rea* for aggravated assault. First-degree "aggravated assault is established when an actor 'attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.'" **Commonwealth v. Spruill**, 80 A.3d 453, 455 (Pa. 2013), *quoting* 18 Pa.C.S.A. § 2702(a)(1). In this case, the Commonwealth argued that Appellant acted recklessly. **See** N.T., 2/10/14, at 56. As this Court has explained:

> To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of

consequences and a mind regardless of social duty, although a particular person may not be intended to be injured.

***Commonwealth v. Riggs***, 63 A.3d 780, 784–785 (Pa. Super. 2012), *appeal denied*, 63 A.3d 776 (Pa. 2013) (internal quotation marks omitted).

This Court has found recklessness when a caregiver abused a young child. For example, in ***Commonwealth v. Smith***, 956 A.2d 1029 (Pa. Super. 2008) (*en banc*), *appeal denied*, 989 A.2d 917 (Pa. 2010), the victim suffered from shaken baby syndrome. ***Id.*** at 1031. A pediatric neurosurgeon testified that these injuries were not the result of playful shaking, but instead were caused by violent shaking. ***Id.*** at 1037. This Court held that "[n]othing more than common sense is needed to know that the violent shaking of an infant child provides for a substantial and unjustifiable risk of serious bodily injury." ***Id.*** Thus, this Court concluded that the evidence was sufficient to convict the defendant of aggravated assault. ***Id.***

In ***Commonwealth v. Hardy***, 918 A.2d 766 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008), the victim died from injuries suffered as a result of shaken baby syndrome. ***Id.*** at 770. The defendant was charged with third-degree murder, which requires the same recklessness as is required for aggravated assault. This Court concluded that there was sufficient evidence of recklessness because:

> There was expert testimony that [the v]ictim died because someone grabbed him and slammed him against something such that immense force was applied to his head. There was also

expert testimony that someone grabbed [the v]ictim violently, squeezed him so as to fracture his ribs, shook him, and caused his head to strike a hard object with enough force to produce bleeding, swelling and, ultimately, death.

*Id.* at 774.

The same pediatric neurosurgeon that testified in **Smith** testified in the case *sub judice*. At trial, he testified that Victim "suffered a rather severe traumatic brain injury. . . . [I]t was abusive in nature." N.T., 2/6/14, at 146. He also opined that, "It's my view – and I say this within a reasonable degree of medical certainty – that [Victim] suffered a severe traumatic brain injury from allegedly being thrown to the ground and striking his head on the floor[.]" *Id.* at 148. The pediatric neurosurgeon also stated, "[w]hat I'm sure of is that whatever it was that happened was inflicted and not accidental and that it caused a severe brain injury." *Id.* at 174. This testimony was essentially the same testimony that the same pediatric neurosurgeon gave in **Smith**, and which we deemed sufficient to conclude that the defendant in **Smith** acted recklessly.

As in **Hardy**, the evidence in the case at bar, viewed in the light most favorable to the Commonwealth, showed that Appellant pushed Victim to the ground, causing severe brain trauma. Appellant makes several arguments relating to how she lacked the requisite *mens rea* for aggravated assault. These arguments, however, view the evidence in the light most favorable to Appellant and go to the weight of the evidence instead of its sufficiency. Therefore, we conclude that there was sufficient evidence to prove that

Appellant acted recklessly. Accordingly, there was sufficient evidence to convict her of aggravated assault.

Finally, Appellant contends that the conviction is against the weight of the evidence. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *In re J.B.*, 106 A.3d 76, 97 (Pa. 2014) (citation omitted). Appellant properly preserved her weight of the evidence claim by raising the issue in her post-sentence motion.

"[A] new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Commonwealth v. Tejada*, 107 A.3d 788, 795–796 (Pa. Super. 2015) (internal alteration and citation omitted). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" *Commonwealth v. Ferguson*, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

When ruling on Appellant's weight of the evidence claim, the trial court concluded:

> [Appellant's] weight claim fails. The jury is free to believe all, parts, or none of the evidence, and to make credibility determinations. Conflicts between testimonies are for the jury to resolve, and review of the jury's credibility determinations is

- 22 -

not for the trial court to undertake. Upon careful consideration of the record, the [trial c]ourt does not find any of the evidence presented by [Appellant] in support of her weight claim so clearly of greater weight than the evidence presented supporting her convictions that failure to give it credence amount to a denial of justice. The verdicts are not so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 7/1/14, at 47. After careful review of the entire certified record, we discern no abuse of discretion in the trial court's analysis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015