**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michele Renae HUNTER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2012.
Filed Jan. 15, 2013.

Stephen D. Kulla, Waynesboro, for appellant.

Lauren E. Sulcove, Assistant District Attorney, Chambersburg, for Commonwealth, appellee.

BEFORE: SHOGAN, J., LAZARUS, J., and OTT, J.

## OPINION BY LAZARUS, J.

Michele Renae Hunter appeals from the trial court's order denying her pretrial motion *in limine*[1] seeking to exclude from evidence text messages (texts)[2] sent between her and her co-defendant Husband.[3] On appeal, we are faced with determining whether our Commonwealth's confidential spousal communications privilege, codified at 42 Pa.C.S. § 5914, extends to Hunter's texts.

Because the record reflects that the texts are being used in ongoing child abuse proceedings involving Hunter and the child-victim in the instant criminal case, Hunter could not have had a reasonable expectation that her communications would remain confidential. Therefore, we agree with the trial court that the section 5914 spousal privilege does not apply under the facts of this case and the texts are admissible at trial. Accordingly, we affirm.

## FACTS

In June 2012, Hunter was charged with simple assault (M1),[4] aggravated assault[5] (F–1) and endangering the welfare of a child (F–3).[6] The four-year-old victim,

---

1. This order is immediately appealable pursuant to the collateral order doctrine. *See* Pa. R.A.P. 313(b) (collateral order is one: (1) which is separable from and collateral to main cause of action; (2) right involved is too important to be denied review; and (3) where the question presented is such that if review is postponed until after final judgment, claim will be irreparably lost).

2. Although the question of whether text messages are considered "communications" under section 5914 is not at issue in this case, our Court has found that the section 5914 privilege extends to oral or written words, expressions or gestures which are intended by one spouse to convey a message to the other spouse. *Commonwealth v. McBurrows*, 779 A.2d 509 (Pa.Super.2001). We also recognize that electronic communications (emails), just like text messages, now "play a ubiquitous role in daily communications" and, likewise, may impinge upon the application of the spousal communication privilege. *See U.S. v. Hamilton*, 701 F.3d 404, 408–09 (4th Cir. 2012) (email between husband and wife not subject to marital communication privilege where they were made sent to and from husband's work email on his work computer and, thus, there could be no objectively reasonable belief in privacy of communications; mails were subject to search by employer and husband did not take *any* steps to protect emails).

3. We may reverse rulings on the admissibility of evidence only if we find that the trial court abused its discretion. *Commonwealth v. Lockcuff*, 813 A.2d 857, 860 (Pa.Super.2002).

4. 18 Pa.C.S. § 2701(a)(1).

5. 18 Pa.C.S. § 2712(a)(1).

6. 18 Pa.C.S. § 4304(a)(1).

B.H., Jr., is Husband's biological son and Hunter's stepson. While in Hunter's care, B.H., Jr., suffered a severe brain injury (subdural hemorrhage), which led to cardiopulmonary arrest. The attending pediatrician on staff at the hospital where B.H., Jr., was taken for treatment opined that there is a high probability that he will suffer lasting brain damage as a result of the injury.[7] The doctor also noticed that B.H., Jr., had bruising over his entire back, consistent with hand prints, as well as on both arms and elbows. The doctor noted that child abuse was suspected.

Initially, Hunter told the police that on March 16, 2011, B.H., Jr., had been upstairs and had fallen and reopened an old cut on his chin. She also told the officers that the boy had passed out in the bathroom, fell, and was non-responsive and had difficulty breathing. Days later, Hunter told the authorities that she had not given accurate information regarding how the child became injured and that, in fact, on March 15, 2011, she had pushed the child down, causing him to hit his head. She said that he became unresponsive and that she was unable to rouse him by carrying him to the bathroom and splashing cold water in his face. She said that the boy remained relatively unresponsive ("limp") throughout the day, falling in and out of periods of responsiveness. He was unable to move his limbs or sit up on his own.

Hunter also told the authorities that throughout the day on March 15, she began sending Husband texts[8] at work, describing the boy's deteriorating condition over a 36–hour span. B.H., Jr., was unable to walk or sit up on his own that

evening and was put to bed by Husband and Hunter, both of whom checked on him throughout the night. The next morning, March 16, B.H., Jr. was able to walk with some assistance, although he continued to exhibit many of the physical symptoms from the day before. That evening, as Husband carried his son into his bedroom, B.H., Jr. began gasping for breath and went into cardiac arrest. He was rushed to the hospital.

Hunter was charged with simple assault, aggravated assault and endangering the welfare of a child; Husband was charged with conspiracy to endanger the welfare of a child and endangering the welfare of a child. On October 17, 2011, Hunter filed an *omnibus* pretrial motion seeking to exclude from evidence the texts she sent to Husband on March 15th & 16th. The trial court held a hearing on the motion on December 15, 2011. Ultimately the trial court denied Hunter's motion. This timely appeal follows.

## DISCUSSION

■ This Commonwealth's statute regarding privileged confidential communications between spouses, which is central to this appeal, states:

> Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914 (enacted 1976). As noted, the only recognized exception to

---

7. In fact, at Hunter's bail hearing, B.H., Jr.'s foster mother testified that he is unable to walk, talk, swallow food, communicate or play. N.T. Bail Hearing, 11/21/2011, at 42. He has a shunt in his head to drain fluid and a permanent feeding tube that goes into his stomach and intestines. *Id.* at 43.

8. More than 50 texts were sent by Hunter to Husband over that time period, ending when the boy went into cardiac arrest and was rushed to the hospital.

section 5914's privilege is when it is waived by the spouse asserting the privilege upon trial. Historically, the privilege was enacted to preserve marital harmony by encouraging free marital communication, allowing spouses to confide freely, and protecting the privacy of marriage. *Commonwealth v. McBurrows*, 779 A.2d 509 (Pa.Super.2001). For these reasons, the privilege may be invoked even after a marriage has dissolved.[9]

Practically, it is important that courts recognize that excluding information may not always further the intended goal of a privilege and may, in fact, hinder the prosecution of legal proceedings intended to protect fragile members of society. One such instance is in the prosecution of child abuse cases when the perpetrator(s) involved are spouses and at least one is the parent of the minor child.

Pennsylvania's Child Protective Services Law (CPSL) recognizes that, in order to further important public policy, privileged communications may need to give way to the prosecution of child abuse. Under the CPSL, confidential communications between spouses *are* admissible in any proceedings regarding child abuse or the cause of child abuse. 23 Pa.C.S.A. § 6381(c).[10] Although not central to its holding, in *Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707 (2002), our Supreme Court recognized that:

> [T]he CPSL is relevant to the construction of § 5914 in a more subtle and indirect fashion. The Court in [*Commonwealth v.*] *May* recognized that the question of what is a "confidential" communication turns in part on the reasonable expectation the declarant has that the communication will remain confidential. [540 Pa. 237] 656 A.2d [1335], 1341–42 [ (1995) ]. Even if it is assumed that § 6381(c) does not act directly to provide a broad child abuse exception to § 5914's application in criminal proceedings, it certainly affects what a spouse's "reasonable expectation" of continued confidentiality may be with respect to marital communication that reveal the previous or intended abuse and intimidation of a child.

*Id.* at 722.

In *Spetzer*, the Court found that the spousal communications at issue were not confidential based upon the fact that defendant's "persistent and sadistic statements" concerning his actual and contemplated crimes against his wife and her children "could not be rationally excluded [under the section 5914 privilege] ... as the challenged communications 'did not arise from the confidence existing between the parties, but the want of it.' " *Id.* at 721. Although in this case neither side claims that Hunter and Husband's marriage was in a state of disharmony at the time the texts were sent, the *Spetzer* Court's commentary on the interplay of the CPSL and section 5914 is instructive to our holding today.

■ While communications between spouses are presumed to be confidential[11]

---

9. In fact, at her bail hearing, Hunter testified that she was in the process of "getting papers going through the jail to get a divorce [from Husband] taken care of." N.T. Bail Hearing, 8/23/2011, at 19. *See Commonwealth v. Valle–Velez*, 995 A.2d 1264 (Pa.Super.2010) (spousal privilege under section 5913 applies in situations where couple has filed for divorce, but divorce decree not yet entered; couple still had legally valid marriage).

10. The same spousal communications privilege applies in civil proceedings and is also vitiated under section 6381 of the CPSL in child abuse proceedings. *See B.K. v. Department of Public Welfare*, 36 A.3d 649 (Pa. Cmwlth.2012).

11. Although Hunter's texts and a police officer's testimony indicate that Hunter "googled" the child's symptoms on the internet to diagnose his condition, N.T. Bail Hearing,

under section 5914, *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074, 1078 (1993), it has long been recognized that whether a particular communication is privileged depends upon its nature and character and the circumstances under which it was said. *Hunter v. Hunter*, 169 Pa.Super. 498, 83 A.2d 401 (1951). It is essential that the communication be made in confidence and with the intention that it not be divulged. *May, supra* at 1342. Moreover, it is the burden of the party opposing the privilege to overcome the presumption of confidentiality. *Hancharik, supra* at 1078.[12]

In the instant case, we conclude that Hunter could not have reasonably expected her texts to remain confidential where she testified that they had been the subject of a Children and Youth hearing, N.T. Omnibus Hearing, 12/15/2011, at 33–34, and where the record reflects that Hunters' texts had, in fact, been at issue in an August county child welfare agency hearing that "likely contained information that would be material to [Hunter's] guilt or punishment [in the instant criminal proceedings]." Defendant's Motion for Preparation and Release of Transcripts, 11/3/2011. Because the texts cannot be considered confidential under the facts of

this case, section 5914 does not apply to exclude Hunter's texts from evidence.

■ Moreover, we find that our decision today provides some consistency in the application of section 5914 and our Commonwealth's spousal testimonial privilege, codified at 42 Pa.C.S.A. § 5913.[13] In 1989, the legislature enacted the section 5913 privilege, which provides an exception to the general prohibition of spouses testifying against each other when the criminal proceeding involves bodily injury or violence attempted, done or threatened upon the minor children of husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them. 42 Pa.C.S.A. § 5913(2).

The privilege in section 5913[14] is, without question, separate and distinct from the privilege at issue here, found in section 5914.[15] *Hancharik*, 633 A.2d at 1076. Despite their apparent differences, we find no rational basis for not having a child abuse exception under section 5914 as well. The lack of an exception under section 5914 not only trivializes the import of child abuse, but fails to recognize that the effect of admitting these communications outweighs

8/23/2011, at 58, we do not rely on these facts to conclude that the texts were not confidential communications. Hunter's internet activity is not the equivalent of disclosure of the same or similar information contained in the spousal texts to third parties. *Compare Commonwealth v. Small*, 602 Pa. 425, 980 A.2d 549 (2009) (communication is not considered confidential under section 5914 if defendant has already personally disclosed same or similar information to third party).

**12.** We caution the Commonwealth that as the party opposing application of the privilege, it should have put forth evidence at the motion *in limine* to overcome the presumption of the communication's confidentiality. However, because there is record evidence of CYS proceedings involving Hunter and the child-vic-

tim, we find that CPSL comes into play in the instant criminal proceedings to vitiate the privilege.

**13.** Generally, section 5913 provides:

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse[.]

42 Pa.C.S.A. § 5913. *See also* Act No. 16 of 1989 (converting spousal incompetency to testify into waivable spousal privilege).

**14.** Under section 5913, only the witness may invoke the privilege to refuse to testify.

**15.** Section 5914 was rewritten in 1978.

any benefit in upholding the sanctity of the spousal privilege.

Section 5914 is a much more limited rule than that espoused in section 5913. *Id.* at 1077. The section 5914 privilege only bars a spouse's testimony if it pertains to *a communication* made by the party-spouse. By contrast, a testimonial privilege, like that found in section 5913, bars a court from compelling any testimony from a witness in a marital relationship with a party in a court proceeding. Whereas the section 5914 privilege outlasts both death and divorce, the section 5913 privilege only extends as long as the marriage.

Accordingly, even if Hunter's texts were not admissible under section 5914, under the child abuse exception in section 5913, Husband may be compelled to testify against Hunter at trial. *Hancharik, supra* (legislature's amendments to section 5913 have made it abundantly clear that spousal privilege simply does not exist in criminal proceedings where violence has been done or threatened upon a minor child in the care or custody of spouse/defendant). In fact, at Hunter's bail hearing, defense counsel indicated that Husband had already agreed to testify against Hunter in this criminal case. N.T. Bail Hearing, 8/23/2011, at 19.

It seems illogical to potentially hinder the Commonwealth's child abuse case by excluding at trial, as per section 5914, critical communications regarding that abuse made between spouses—especially where more than 90% of reported child abuse cases stem from abuse that occurred in the home.[16] Fortunately, in this case there was ample evidence to make a case for the prosecution, independent of the texts, primarily from Hunter's admissions to the police. However, in other cases where those "privileged" communications provide the sole basis for the criminal complaint against an alleged child abuser, the prosecution may be hampered in proving its case at trial. *See Commonwealth v. Jones*, 501 Pa. 162, 460 A.2d 739, 741–42 (1983) (privileged marital communications between spouses may be used by police for purposes of securing arrest warrant for defendant-spouse; prohibition against using spouse's statement goes only to use at trial for conviction of defendant).

## CONCLUSION .

Instantly, we conclude that where a defendant-spouse is the alleged perpetrator in current child abuse proceedings [17] and where that abuse forms the basis of criminal proceedings against that defendant-spouse, the section 5914 privilege shall not apply at the defendant's criminal trial to preclude admission of spousal communications.[18] We believe that the spouse cannot maintain a reasonable expectation that the marital communications she made will remain confidential under such circumstances.[19] This holding not only modern-

---

16. *U.S. v. Allery*, 526 F.2d 1362, 1366 (8th Cir.1975), *citing Evidentiary Problems in Criminal Child Abuse Prosecution*, 63 GEO. L.J. 257, 258 (1974).

17. Our holding today does not go so far as to apply the CPSL's section 6381(c) exception in all criminal prosecutions involving suspected child abuse.

18. We are not limited by the trial court's rationale and may affirm its decision on any

basis. *Blumenstock v. Gibson*, 811 A.2d 1029, 1033 (Pa.Super.2002).

19. Although today we do not make the broad holding that in all criminal prosecutions involving child abuse, the section 5914 privilege shall not apply, we recognize that many other states have had the foresight to enact such laws. *See* Alaska R. Evid. 505(a)(2)(D)(i) (2012) (Alaska); Colo.Rev.Stat. § 13–90–107 (2012) (Colorado); Iowa Code § 232.74 (2012) (Iowa); Ken. R. Evid. 504(c)(2)(B) (2012) (Kentucky); La.Code Evid. Ann. art.

izes the antiquated notion of preserving marital harmony above all else, but reinforces the significant purpose of protecting children from abuse and promoting the reporting of such abuse. Finally, creating a child abuse exception in section 5914 will promote more effective prosecution of such cases which also serves important public policies.[20]

Order affirmed.

504(C)(1) (2012) (Louisiana), Mont.Code Ann. § 26–1–802 (2012) (Montana); and Ohio R. Evid. 601(B)(1) (2012) (Ohio).

**20.** *See* Emily C. Aldridge, Note, *To Catch a Predator or to Save his Marriage: Advocating for an Expansive Child Abuse Exception to the Marital Privileges in Federal Courts,* 78 FORDHAM L.REV. 1761, 1803 (2010) (abused children are 25% more likely to become pregnant teenagers, 59% more likely to be arrested as juveniles; ramifications extend to adulthood, where 14% of imprisoned men and 36% of imprisoned women in U.S. were abused as children; sexually abused children are more likely to develop controlled substance abuse and addiction issues).