J-S07043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRENTT MICHAEL SHERWOOD | : | No. 605 MDA 2024 |

Appeal from the Order Entered April 2, 2024
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000342-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRENTT MICHAEL SHERWOOD | : | |
| | : | |
| Appellant | : | No. 655 MDA 2024 |

Appeal from the PCRA Order Entered April 2, 2024
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000342-2005

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MAY 22, 2026**

These consolidated cross-appeals consider the propriety of an order under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  The Commonwealth appeals from the order that granted Brentt Michael Sherwood's (Sherwood's) request for a new trial.  Sherwood cross-appeals from the denial of the remaining claims from his PCRA petition.  After careful

review, we are constrained to reverse the order granting Sherwood a new trial. We also affirm the order denying Sherwood's remaining PCRA claims. We consider the merits of each appeal in turn.

### *Factual History*

The Pennsylvania Supreme Court detailed the factual history of this case in Sherwood's direct appeal,[1] which we reproduce, in pertinent part, herein:

> The instant matter arose out of the beating death of [Sherwood]'s four year old step-daughter, Marlee Reed [the victim], on December 7, 2004. At about 1:00 p.m. that day, [Sherwood], who was home baby-sitting [the victim], called 911 and reported that she had passed out. When EMTs arrived, they observed that the child's skin showed cyanosis, and that she had significant bruising on her abdomen, chest, arms, legs, neck, and face, she did not have a discernible heartbeat, and was not breathing. The EMTs asked [Sherwood] what had happened to the child and he told them that he had just awakened and found her in that condition. He then added that she had fallen. The EMTs tried, unsuccessfully, to revive the child for thirty minutes and then took her to Sunbury Community Hospital where additional efforts were made to revive her. Although doctors were able to restore some vital functions, [the victim] did not regain consciousness. [The victim] was then flown by helicopter to Geisinger Medical Center where she died the next morning having never regained consciousness.
>
> In addition to calling 911, [Sherwood] had also telephoned his wife Heather Goodeliunas [hereafter, "Mother"], [the victim's] mother, and told her that she had to come home immediately because [the victim] was not breathing. [Mother] hurried home and as she entered the residence, [Sherwood] began apologizing

---

[1] Sherwood was initially sentenced to death, which is why our Supreme Court considered the direct appeal of his judgment of sentence. *See* 42 Pa.C.S. § 9711(h)(1). However, Sherwood's death sentence was converted to a term of life imprisonment by agreement between the parties on October 25, 2021. *See*, N.T. 10/25/21 at 7-16. The Commonwealth agreed to amend the sentence in exchange for Sherwood's waiver of all PCRA claims related to the penalty hearing. *Id.*

to her, saying repeatedly, "I'm so sorry, baby." In addition, [Mother] received a telephone call from [Sherwood] after he had been taken to police headquarters during which he stated, "Do you think I would put myself at risk for going to jail for the rest of my life for manslaughter?"

Although [Sherwood] never spoke to [Mother] again, he did send her letters. In a letter dated December 10, 2004, he wrote, "I am so sorry about what happened. I know that a million sorries wouldn't make up for what happened." [Sherwood] added, "Right now I feel like the lowest piece of [expletive deleted] that I could ever think of, and rightfully so. I feel like I let you down." [Sherwood] ended the letter by writing, "I hope I hear from you soon so I can explain myself."

*Commonwealth v. Sherwood*, 982 A.2d 483, 486–89 (Pa. 2009).

Sherwood was detained by police and initially made some statements

regarding the right to counsel. However:

On December 9, 2004, Corporal Richard Bramhall of the Pennsylvania State Police went to county prison to speak to [Sherwood]. After the Corporal told [Sherwood] that he considered [Sherwood]'s remark two days earlier about feeling as though he needed an attorney to be ambiguous and not a clear invocation of the right to counsel, the corporal administered *Miranda*[fn] warnings to [Sherwood]. [Sherwood] waived his *Miranda* rights and provided a statement wherein he admitted that he had beaten the child to death (the "December 9 Statement"). In the December 9 Statement, [Sherwood] said that he was home watching [the victim] and became angry because she said that she did not want to be there with [Sherwood]. As a result, he slapped the child in the face.

[fn. *Miranda v. Arizona*, 384 U.S. 436 (1966).]

In the December 9 Statement, [Sherwood] said that a couple of hours after he slapped [the victim], they watched a movie. Afterwards[, the victim] said to [Sherwood] that she felt sorry for him. When he asked why, she said, "Because you're mean." Upon hearing [the victim's] response, [Sherwood] said he "snapped" and punched [her] in the stomach with a closed fist and kicked her in her stomach or back, which caused her to fall to the floor. He then kicked her several times more in her stomach and back

and also punched her as she lay on the floor. [The victim] asked him to stop and tried to stand. She was unable to get to her feet and fell back to the floor where she was struck some more by [Sherwood]. According to the December 9 Statement, [the victim] eventually got up and ran into a bedroom where [Sherwood] punched her again and caused her to fall; he continued to kick and punch her. The beating, [Sherwood] stated, continued even though [the victim] pleaded for him to stop.

According to [Sherwood], the beating lasted ten minutes in total and he stopped hitting [the victim] a couple of times before again resuming his assault. [Sherwood] had no explanation as to why he resumed the assault after twice stopping and indicated that when he finally ended the assault, he knew that he had "done something bad."

*Id.*

### *Procedural History*

On March 1, 2005, Sherwood was charged with one count each of criminal homicide (first-degree murder) (18 Pa.C.S. § 3501(a)), aggravated assault (18 Pa.C.S. § 2702(a)(1)), and endangering the welfare of a child (18 Pa.C.S. § 4304(a)). Following a jury trial on April 30, 2007, Sherwood was convicted of all charges. Thereafter, he was sentenced on July 30, 2007, to death followed by a consecutive term of 3½ to 7 years of incarceration. Sherwood appealed his conviction via a direct appeal to the Pennsylvania Supreme Court, which affirmed his judgment of sentence on November 6, 2009. *Sherwood*, *supra*. The United States Supreme Court denied his petition for a writ of certiorari on May 3, 2010. *Sherwood v. Pennsylvania*, 559 U.S. 1111 (2010).

Sherwood filed his first, *pro se*, PCRA petition on August 11, 2010. Counsel was appointed and filed an amended PCRA petition. Counsel later

amended additional petitions on Sherwood's behalf. The final PCRA evidentiary hearing occurred on April 1, 2021, after which both parties filed post-hearing briefs. The PCRA Court granted Sherwood a new trial by the order and opinion dated April 2, 2024.

The Commonwealth filed a timely notice of appeal on April 25, 2024. On May 7, 2024, Sherwood filed a counseled notice of cross-appeal, alleging PCRA court error in denying Sherwood's additional PCRA claims. The Commonwealth filed a timely statement of errors complained of on appeal, as ordered by the PCRA court, on June 3, 2024. Sherwood filed his timely statement of errors on June 4, 2024. The PCRA court filed a one-page opinion on June 4, 2024, indicating that it was relying on the analysis of issues contained in the opinion dated April 2, 2024. This Court has consolidated the two appeals, designating the Commonwealth as the appellant/cross-appellee and Sherwood as the appellee/cross-appellant.

### *Commonwealth's appeal*

The Commonwealth's sole issue on appeal follows:

Whether the PCRA [c]ourt's grant of a new trial on grounds of ineffective assistance of trial counsel due to the prejudicial effect of cumulative error in the cross-examination of [Mother] constitutes reversible error because its finding of prejudice is unsupported by the record, conflicts with the governing law, and is illogical and unsound?

Commonwealth's Brief at 4.

"We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is free of legal

- 5 -

error." ***Commonwealth v. Min***, 320 A.3d 727, 730 (Pa. Super. 2024) (citation omitted). The scope of our review is "limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Commonwealth v. Hanible***, 30 A.3d 426, 438 (Pa. 2011) (citation omitted). We defer to the factual findings of the post-conviction court, which was tasked with hearing the evidence and assessing witness credibility. ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023). The PCRA court's legal determinations, however, are subject to plenary review. ***Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa. Super. 2012).

The PCRA court granted Sherwood a new trial based upon its finding that Sherwood's trial counsel was ineffective in two ways during the cross-examination of Mother. In evaluating any claim encompassing an allegation of ineffective assistance of counsel, the following standards apply:

> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the ***Strickland [v. Washington***, 466 U.S. 688 (1984)] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result.

- 6 -

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (most internal citations omitted). If an appellant fails to satisfy any prong of the ineffectiveness standard, the claim will fail. ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 911 (Pa. Super. 2009). A petitioner must establish a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Commonwealth v. Mullen***, 267 A.3d 507, 512 (Pa. Super. 2021) (citation omitted).

The PCRA Court held that Sherwood's trial counsel was ineffective by (1) not cross-examining Mother about her cooperation agreement with the Commonwealth, and the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83 (1963), by not disclosing the same and (2) failing to adequately impeach Mother's testimony with records from Children's and Youth Services (CYS) concerning what she had disclosed regarding Sherwood's prior bad acts involving the victim. PCRA Court Opinion, 4/2/24 (PCO) at 17-27. The PCRA court initially held that, while considering the claims individually, each of these two assertions of ineffective assistance were meritorious and counsel's actions were not reasonably designed to effectuate Sherwood's best interests; however, the court further held that Sherwood had not established that the outcome of his case would have been changed had trial counsel acted differently; in other words, Sherwood had not demonstrated prejudice as to each claim in isolation. PCO at 24, 27. Nonetheless, based upon its conclusion

that cumulative prejudice was established, the court awarded Sherwood a new trial. PCO at 48.

With respect to the doctrine of cumulative prejudice,

We have often held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009) (quoting ***Commonwealth v. Washington***, 927 A.2d 586, 617 (Pa. 2007)). However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. ***Commonwealth v. Sattazahn***, 952 A.2d 640, 671 (Pa. 2008). When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed. ***Id.***; ***Johnson***, ***supra*** at 532 (citing ***Commonwealth v. Perry***, 644 A.2d 705, 709 (Pa. 1994), for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation).

***Spotz***, ***supra***, 18 A.3d at 321 (cleaned up).

We first address the claim that counsel was ineffective because he failed to cross-examine Mother about a cooperation agreement she had with the Commonwealth in exchange for her testimony against Sherwood. The PCRA court found that, although "[t]here was no evidence of a formal plea agreement between [Mother] and the Commonwealth," "there was an ***informal*** understanding between [them]." PCO at 18-19. The court noted that, at the PCRA hearing, District Attorney Anthony Rosini stated that no agreement existed, although the prosecution "told [Mother's attorney] that we would take her cooperation in the case into consideration." N.T. PCRA Hearing, 10/25/21 at 111.

- 8 -

The PCRA court stressed that circumstantial evidence tended to show an understanding: for instance, a continuance request from Mother's case whereby her counsel specifically sought the continuance pending the outcome of Sherwood's trial; District Attorney Rosini's statement at Mother's sentencing hearing that his recommendation for a five-year probationary sentence was because of Mother's plea and her cooperation in the prosecution of Sherwood, "who was the actual murderer of the child, and who was convicted based on the testimony presented, part of which was [Mother's] testimony," and that the prosecution wanted to "present the best case possible against" Sherwood, which included proving prior abuse of the child, and which information had to come from Mother. PCO at 19. The court also considered the result of Mother's criminal case - which took place shortly after Sherwood's sentencing – where Mother entered a plea to one count of endangering the welfare of a child and was sentenced to a term of five years of probation. N.T. PCRA Hearing, *supra*, at 109-113. Moreover, District Attorney Rossini told the PCRA court that but for Mother's cooperation, he would have pursued her incarceration. PCO at 20.

This evidence caused the PCRA court to conclude that an informal understanding existed, even if a full negotiated plea agreement was not in place. PCO at 21. The PCRA court then addressed whether the Commonwealth had committed a *Brady* violation by failing to disclose its informal understanding with Mother.

In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. To "prove a **Brady** violation, the defendant must show that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." **Commonwealth v. Busanet**, 54 A.3d 35, 48 (Pa. 2012). "The **Brady** rule extends to impeachment evidence including any potential understanding between the prosecution and a witness, because such information is relevant to the witness' credibility." **Commonwealth v. Wholaver**, 177 A.3d 136, 158 (Pa. 2018). Further,

> [i]n determining if a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

**Id.** at 158–59.

The PCRA court cited **Commonwealth v. Kinard**, 95 A.3d 279, 290 (Pa. Super. 2014) for the proposition that the Commonwealth is obligated to disclose "not only definitive agreements, deals struck, and ironclad, signed, sealed contracts, but also any potential understanding between the

prosecution and its witness, and any implication, promise, or understanding that the government would extend leniency in exchange for a witness' testimony." PCO at 48 (internal citation and quotation marks omitted). Thus, the PCRA court concluded, Sherwood's ineffective assistance argument on this point has arguable merit – any informal agreement or understanding should have been disclosed – satisfying the first ineffectiveness prong. PCO at 22. The court also found that trial counsel could have had no reasonable basis for failing to impeach the witness with evidence of this informal understanding, satisfying the second ineffectiveness prong. *Id.* However, prejudice was not proven because the jury was aware that Mother faced criminal charges in this case for her own actions, in addition to the overwhelming evidence of Sherwood's guilt. *Id.* Thus, as the third prong was not proven, Sherwood's ineffective assistance of counsel claim failed. *Fitzgerald*, *supra*. While the failure to impeach Mother impacted the jury's perception of Sherwood, the PCRA court stressed that it wasn't "enough on its own to have changed the jury's verdict." PCO at 24.

As to Sherwood's second ineffectiveness claim, the PCRA court concluded that trial counsel should have impeached Mother regarding her testimony that Sherwood had committed child abuse against the victim in the past. Specifically, Mother testified about six incidents of abuse in the year prior to the victim's death. *See* N.T. Jury Trial, 4/23/07 at 339-346. CYS became involved with the family, and conducted several monthly visits at the

parties' home with Sherwood, Mother, and the victim present. Sherwood alleged that trial counsel should have impeached Mother with the CYS records from the visits which occurred between December 2003 and November 2004 (just before the victim's death) to show that Mother, despite having the opportunity to do so, never claimed that she was afraid of Sherwood and never told CYS that Sherwood had been abusing the victim. The court explained that, had trial counsel impeached Mother with each of the reports indicating that nothing was untoward in the home, the jury "may have discredited [Mother's] testimony." PCO at 26.

Moreover, one of the prior incidents involving CYS was caused by Mother setting a bed on fire during an argument, which resulted in her being hospitalized for three days. *Id.* The PCRA court stated, "Had defense counsel impeached the witness with this divergence the jury would have again had to confront the possible bias and lack of credibility of this witness." *Id.* Thus, the court found that the first prong of the ineffectiveness test, arguable merit, was established.

The court also found that no reasonable basis existed for counsel's failure to challenge Mother on this issue.[2] The court explained:

> There was no reasonable basis for defense counsel to not challenge the alleged incidents of abuse, the discrepancy of the bed incident, or [Mother] being fearful of [Sherwood]. [Mother's] testimony was an important element of the Commonwealth's case, which defense counsel knew as he tried but ultimately failed

---

[2] We note that trial counsel died prior to the PCRA hearing.

- 12 -

to properly impeach her. Had defense counsel questioned the witness incident by incident the witness's credibility would have been undermined. This alternative strategy offered [Sherwood] a greater chance of success than the one that was pursued. Perfect advocacy is not the standard, but these failures were more than inadvertent mistakes. There is no conceivable reason for why counsel did not pursue these issues more vigorously.

PCO at 27. Nonetheless, the court concluded that counsel's ineffectiveness in this regard did not prejudice Sherwood such that the outcome of the proceeding would have been different. *Id.* Thus, as the third prong of the ineffectiveness test was not proven, the claim failed.

Ultimately, however, the PCRA court found cumulative prejudice was shown through these two instances of ineffective assistance, and awarded Sherwood a new trial. The court reasoned:

Both issues on their own fail to warrant relief but together [Sherwood] was prejudiced as the jury was not given the information that [Mother] was benefiting from her testimony and that her testimony diverged from her prior statements to CYS. Together these facts would have impacted the jury's credibility determination of [Mother]. Trial counsel provided ineffective assistance of counsel in failing to properly inform the jury of this information. Which certainly can be found to have impacted the jury's finding of first-degree murder versus the other available option of third-degree. Therefore, [Sherwood] is entitled to relief on his claim of cumulative error.

PCO at 48.

In this appeal, the Commonwealth maintains that the PCRA court erred in its cumulative prejudice analysis because the jury was aware that Mother was facing her own charges in connection to this case and because the evidence that Sherwood was guilty of first-degree murder was overwhelming. The Commonwealth argues that, considering the totality of the evidence which

included Sherwood's confession, the significance of Mother's testimony to the prosecution's case was *de minimis*. Commonwealth's brief at 48. Further, the Commonwealth stresses that the prejudice analysis here must be viewed in the context of all evidence received in the case.

The Commonwealth pertinently points out that the evidence in this case includes Sherwood's own testimony about the events leading up to the victim's death. Sherwood had admitted to Corporal Richard Bramhall of the Pennsylvania State Police that he had killed the victim. Corporal Bramhall testified that, after being informed of his rights pursuant to ***Miranda v. Arizona***, Sherwood admitted his guilt by stating, "Okay, I did it." N.T. Jury Trial, 4/23/07, at 576. Over the course of this interview with Corporal Bramhall, Sherwood recounted punching and kicking the victim multiple times, said that he got angry, "snapped," and lost control of himself, that he had been using cocaine the night before, and again stated to the corporal, "I took her life." ***Id.*** at 586.

Corporal Bramhall further testified that Sherwood had explained that the victim said that she didn't like him, which made him angry and he slapped her. ***Id.*** When she stopped crying, he tried to fix her a peanut butter and jelly sandwich, but she refused it. ***Id.*** at 589. He then put a movie on TV for the victim to watch. ***Id.*** After the movie, the victim said that she felt sorry for Sherwood because he was mean. ***Id.*** at 590. In response, Sherwood punched the girl in the stomach and kicked her while she lay on the floor. ***Id.***

at 591. The victim cried and asked him to stop. *Id.* at 593-94. Eventually, the victim ran into her bedroom and Sherwood followed, again punching her in the back, knocking her to the floor, and kicking her. *Id.* at 596-97. Sherwood got scared that the victim was hurt and moved her to the couch. *Id.* at 598. After a short while, it appeared the victim stopped breathing, so he drew a cold bath and put the victim in the bathtub, thinking it might revive her. *Id.* at 600. When it did not, he called 911. *Id.* at 600-601.

Moreover, Sherwood's trial testimony mirrored the officer's account. N.T., supra, at 730-915. Sherwood recounted his early life history before discussing the events that led to the victim's death. While he testified that he did not mean to kill the victim, Sherwood admitted that he "lost it" and "started hitting her" because he had no control. *Id.* at 835. He claimed to be high on drugs at the time. *Id.* Sherwood also noted that the victim had said things to him that he did not like, which caused Sherwood to hit her and kick her for some time. *Id.* at 835-36. Eventually, when he noticed that the victim had stopped breathing, he put her in a cold bathtub in an attempt to revive her, then called 911. *Id.* at 837. The jury thus heard an account of Sherwood's actions through both the corporal's testimony about his statement to police, and Sherwood's own testimony.

We agree with the Commonwealth that Sherwood's testimony provides overwhelming evidence of Sherwood's guilt. In contrast, Mother was not present during the victim's assault and had no relevant information about how

- 15 -

it occurred. While our cases permit consideration of cumulative prejudice in some instances, a petitioner must still demonstrate that the combined effect of those errors so undermined the trial that no reliable adjudication of guilt or innocence could have taken place. After our review, we conclude that Sherwood has failed to make this demonstration.

The PCRA court acknowledged that neither alleged error here, standing alone, created a reasonable probability of a different outcome. That determination is well-supported by the record, particularly in light of the overwhelming, independent, evidence of Sherwood's guilt. Most notably, Sherwood provided a detailed confession, both at trial, N.T., *supra*, at 831-40, and in his statement to police, admitting that he repeatedly struck and kicked the victim over the course of multiple episodes, ultimately causing her death. These admissions were not equivocal; rather, Sherwood explicitly acknowledged that he "did it" and that he "took her life."

In addition to Sherwood's own statements, the nature and extent of the victim's injuries, as reflected in the record, corroborated the Commonwealth's theory of a sustained and intentional beating. Thus, even if Mother's credibility had been further impeached – whether through evidence of an informal understanding to cooperate with the Commonwealth or through inconsistencies in her testimony – the central evidentiary pillars of the Commonwealth's case would have remained the same. Mother's testimony neither implicates nor exonerates Sherwood as she was not present when the

victim was injured. Moreover, as noted earlier, the jury was aware that Mother had been charged in connection to this case, thereby providing a basis to consider her potential for bias or motive to testify favorably for the Commonwealth. **See** PCO at 22. This knowledge diminishes the value of any additional evidence regarding an informal cooperation agreement.

Similarly, while additional impeachment with CYS records may have *marginally* undermined Mother's credibility regarding prior incidents, such evidence would not have negated **Sherwood's own admissions** about his responsibility for the fatal assault on the victim. At most, this line of impeachment would have affected the jury's view of collateral matters, not the core issue of Sherwood's responsibility for the victim's death.

Viewed in totality, we disagree with the PCRA court that Sherwood had established a reasonable probability that the outcome of his trial would have been different. Sherwood was not entitled to a *perfect* trial, just a fair one. **See, e.g., Commonwealth v. Noel** 104 A.3d 1156, 1169 (Pa. 2014) (stating, "the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. A defendant is entitled to a fair trial but not a perfect one.") (internal citation omitted). Where, as here, the properly admitted evidence of Sherwood's guilt is overwhelming, courts have consistently declined to find prejudice, whether in a single instance or cumulatively. **See Commonwealth v. Koehler**, 36 A.3d 121, 132–33 (Pa. 2012) (finding no cumulative prejudice based upon

ineffectiveness where the evidence of guilt was overwhelming); **Busanet**, **supra** (rejecting a cumulative prejudice claim in light of overwhelming evidence). Prejudice will not be established in an ineffectiveness analysis if the trial has resulted in a verdict worthy of confidence. **See Strickland, supra**, 466 U.S. 668, 696 (1984) ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). Such is the case here.

Accordingly, we find that the cumulative errors noted by the PCRA court did not rise to the level that there was a reasonable probability of a different outcome to Sherwood's trial. Rather, we conclude that the guilty verdict under review is worthy of confidence. Thus, the PCRA court erred in granting Sherwood a new trial on this basis. We must reverse the award of a new trial in this case.

### Sherwood's cross-appeal

### (1) The PCRA court committed reversible error by denying Sherwood's claim that the cumulative effect of trial counsel's deficient qualifications and representation were so detrimental to Sherwood's case to warrant a finding of presumptive prejudice and/or ineffective assistance per se

In the cross-appeal, Sherwood first argues that the PCRA court erred by failing to consider his ineffective assistance of counsel arguments under the auspices of **United States v. Cronic**, 466 U.S. 648 (1984), which would not require him to establish prejudice to obtain relief. Sherwood suggests that his counsel's assistance at trial was so defective that prejudice can be

presumed, and he is entitled to a new trial. As the high Court noted in the

*Cronic* case:

> The right to the effective assistance of counsel is … the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic*, 466 U.S. at 656-57 (footnotes omitted).

*Cronic* held that a Sixth Amendment violation may be found when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Wright v. Van Patten*, 552 U.S. 120, 124, (2008), citing *Cronic*, 466 U.S. at 658. One circumstance warranting this presumption is the "complete denial of counsel," that is, when "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 125.[3] However, the presumption of prejudice based upon the failure to test the opponent's case applies "only to cases where the attorney's failure was complete." *Commonwealth v. Diaz*, 226 A.3d 995, 1010 (Pa. 2020). If the failure to test the prosecution's case applied only at specific points in the trial, the

---

[3] The other two times *Cronic* may be applied such that prejudice is presumed is when the state interferes with counsel's representation, or when counsel had an actual conflict of interest. *Commonwealth v. Brown*, 18 A.3d 1147, 1155 (Pa. Super. 2011). Sherwood has proceeded under the first theory, the denial of counsel due to counsel's constructive absence.

- 19 -

proper avenue for seeking redress is with a general claim of ineffective assistance of counsel under **Strickland**, not the limited review available for denial of counsel under **Cronic**. **Id.**

In support of his theory of presumed prejudice, Sherwood first argues that it was error to have only one attorney represent him on capital charges. Here, attorney Brian Manchester represented Sherwood at his preliminary hearing and argued pre-trial motions. Bruce Manchester, Brian's father and law partner, handled *voir dire*, the guilt phase of trial, the penalty phase of trial, and sentencing. The PCRA court addressed Sherwood's claim as follows:

> Pennsylvania does not have a statute or rule requiring two attorneys on death penalty cases. Our highest court had stated "[t]his Court has never endorsed or adopted the ABA guidelines in full. We do not do so now. Appointment of additional counsel is not a right; it is within the trial court's discretion." **Commonwealth v. Wright**, 961 A.2d 119, 132-33 (Pa. 2008).

PCO at 3-4. The PCRA court found that, because two attorneys are not required under Pennsylvania jurisprudence, Sherwood was not *actually* denied counsel under **Cronic**. **Id.** at 4.

Sherwood asserts that, even if two attorneys are not *required* in a capital case, he was constructively denied counsel because even the court expressed concern over trial counsel's stewardship. Sherwood exaggerates this "concern," noting that two different trial judges asked Attorney Bruce Manchester if he had been certified to represent clients in a death penalty case

under Pa.R.Crim.P. 801 (qualifications for defense counsel in capital cases).[4] This inquiry is not necessarily a reflection on the abilities of Sherwood's defense counsel, as only a small percentage of criminal defense attorneys carry this qualification, and it was reasonable for the court to affirm compliance with the rule. Sherwood also argues that Attorney Manchester had serious medical conditions at the time of his trial which impacted his legal work. Again, we note that Attorney Manchester passed away prior to this appeal.

After review, we find that Sherwood's attorney did subject the Commonwealth's case to meaningful adversarial testing. Sherwood's trial spanned seven days, and the transcript contains more than 1,500 pages of testimony. Counsel argued Sherwood's defense theories, specifically that he was not guilty of first-degree murder because he had no intent to kill the victim, and that his voluntary drug use and psychological impairment on the day of the incident rendered him incapable of forming the specific intent to kill. Further, counsel subjected the Commonwealth's witnesses to cross-

---

[4] This Rule requires counsel in death penalty cases to be an active member of the bar in good standing, have a minimum of 5 years of criminal litigation experience, and have served as lead or co-counsel in a minimum of 8 significant cases (felonies where the term of imprisonment is 10 or more years) in cases that were decided by a jury. Pa.R.Crim.P. 801(1). Counsel is also required to have completed certain training approved by the Pennsylvania Continuing Legal Education Board. Pa.R.Crim.P. 801(2).

examination. We agree with the PCRA court that Sherwood was not denied the assistance of counsel and that *Cronic* is not implicated in this case.

### (2) The PCRA court committed reversible error by denying Sherwood's claim that trial counsel was ineffective for failing to object to [Mother's] testimony about conversations and letters she received from him in violation of the confidential marital communication privilege

Sherwood next asserts that his trial counsel should have objected to Mother's testimony at trial because of the marital confidential communication privilege. Pennsylvania's Judicial Code provides that "in a criminal proceeding[,] neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 Pa.C.S. § 5914. Sherwood argues that Mother's testimony included private communications that she had with Sherwood during the course of their marriage which involved this incident. Specifically, Sherwood contends that counsel should have objected when Mother testified that, as she approached the house immediately after being told the victim had been injured, Sherwood "tried to talk to me as soon as I walked in the door. He just kept apologizing. He said, I'm so sorry, baby." N.T. Jury trial, *supra*, at 357. Later that day, as police transported Mother to the hospital to be with the victim, Sherwood called her. Mother testified that he stated: "Do you think I would put myself at risk for going to jail for the rest of my life for manslaughter[?]" *Id.* at 359. Sherwood maintains that defense counsel provided ineffective assistance by failing to object to Mother's

testimony as violative of the spousal communication privilege as set forth in 42 Pa.C.S. § 5914.[5]

The PCRA court declined to find that counsel was ineffective on this basis because "42 Pa.C.S.[] § 5914 is not applicable in situations where child abuse is involved," citing *Commonwealth v. Hunter*, 60 A.3d 156 (Pa. Super. 2013). PCO at 17. In *Hunter*, the defendant was charged with assault and endangering the welfare of her four-year-old stepson after the child suffered serious permanent injuries while in the defendant's care. At her trial, Hunter sought to exclude the more than 50 text messages she had sent to the child's father over the course of the day which detailed the child's deteriorating condition. 60 A.3d at 158.

The *Hunter* panel recognized that communications between spouses are presumed to be confidential under section 5914. *Id.* at 159-60. However, whether a particular communication will be deemed privileged "depends upon its nature and character and the circumstances under which it was said." *Id.* at 160. Thus, it is imperative that the communication be made in confidence and with the intent that it not be divulged. *Id.*

The communications in *Hunter* failed this requirement because they had already been the subject of a CYS hearing. *Id.* Because the texts had

---

[5] Even though the parties have since divorced, the privilege in question applies to communications that occurred during the marriage, and the parties were married when the victim died. *Commonwealth v. Hunter*, 60 A.3d 156, 159 n.9 (Pa. Super. 2013).

already been divulged in the earlier CYS proceeding, Hunter "could not have reasonably expected her texts to remain confidential." *Id.* Sherwood distinguishes *Hunter* on this basis as Mother's communications were not a part of a prior hearing. With respect to the first statement where he apologized to Mother, Sherwood also should not have reasonably expected that his statement would remain private. Critically, the apology to Mother was made as she entered the home and while many other people, including police and emergency medical technicians, were present. *See, e.g.,* N.T. Jury Trial at 161 (Officer Michael Vognetz testifying that he was present when Mother returned to the family home). As this statement, made in the presence of others, could not have been made with any expectation of privacy, the privilege would clearly not apply. *Commonwealth v. Small*, 980 A.2d 549, 562 (Pa. 2009) (holding that the presence of third parties will negate the confidential nature of the communication). Hence, there is no arguable merit to Sherwood's claim as to this statement.

With respect to the statement Sherwood made to Mother on the telephone on the way to the police station, "Do you think I would put myself at risk for going to jail for the rest of my life for manslaughter?" this statement was made privately, thus, Sherwood may have expected that the statement would remain private. Thus, the privilege may arguably apply. However, Sherwood cannot establish that he was prejudiced by the admission of this statement.

Here, the admission of Sherwood's statement, which is not a confession, is so insignificant in contrast to the other, properly admitted evidence of his guilt, that we conclude it could not have impacted the jury's verdict. Thus, Sherwood cannot establish prejudice, which means that he cannot prove that counsel was ineffective on this basis. ***Fitgerald, supra.*** The PCRA court correctly held that Sherwood is not entitled to relief on this claim.

### (3) The PCRA court committed reversible error by holding that the Strickland prejudice standard was not met when the Commonwealth failed to disclose Mother's cooperation plea agreement and trial counsel was ineffective for failing to cross-examine her about it

In this claim, Sherwood contends that the PCRA court erred in concluding that he had not been prejudiced by counsel's failure to cross-examine Mother about the informal cooperation agreement she had reached with the Commonwealth. Sherwood maintains that he established prejudice and therefore the PCRA court did not need to apply "cumulative" prejudice to obtain relief on this claim. We disagree. As previously set forth in our analysis of the Commonwealth's appeal, we cannot agree that Sherwood was prejudiced by counsel's asserted failure to impeach. The PCRA court correctly concluded that Sherwood was not prejudiced by this testimony.

### (4) The PCRA court committed reversible error by holding that the Strickland prejudice standard was not satisfied when counsel failed to conduct an adequate and effective cross-examination of Mother that would have significantly undermined her credibility

Here again, Sherwood argues that he had proved prejudice in his ineffective assistance of counsel claim related to the lack of cross-examination of Mother regarding specific prior instances of abuse, and that the PCRA court thus erred in finding a lack of prejudice. As in the prior issue, Sherwood cannot establish that he was prejudiced in this regard. The overwhelming evidence, primarily consisting of Sherwood's own testimony, established that he was responsible for the heinous attack on this young child. Counsel did cross-examine Mother about her previous claims of child abuse, including testimony about the incident where Mother had set the bed on fire. Sherwood is not entitled to relief.

### (5) The PCRA court committed reversible error by denying Sherwood's claim that trial counsel was ineffective for failing to request a corrupt source instruction

Here, Sherwood argues that Mother was his accomplice and, thus, counsel should have sought a corrupt source instruction. Sherwood maintains that, as Mother was also charged with endangering the welfare of a child [EWOC], specifically the victim, based upon the events of this date, he was entitled to the corrupt source instruction.

The PCRA court addressed this issue as follows:

[T]his court does not find that [Mother] was an accomplice of [Sherwood]. She does not fit the description of an accomplice as stated in 18 Pa.C.S. § 306.[6] The Commonwealth is persuasive

---

[6] 18 Pa.C.S. § 306(c) defines accomplice as follows:

*(Footnote Continued Next Page)*

- 26 -

in its contention that [Mother] was charged with EWOC for "leaving [the victim] in Sherwood's care despite knowing that Sherwood had previously physically harmed her," while [Sherwood's] charges stem from his killing of the child. The only people in the house were [Sherwood] and the victim. [Mother] was not charged as an accomplice. [Mother] testified at trial that she was at work at the time of the incident and there is nothing on the record to indicate that the evidence permits an inference that she was an accomplice. There was no evidence that she intended to aid, solicit, or promote [Sherwood's] crimes.

A corrupt and polluted source[] jury instruction is only applicable when a testifying witness who implicated the defendant in a crime was also complicit in the crime. ***Commonwealth v. Chmiel***, 639 A.2d 9, 13 (Pa. 1994). [Sherwood's] ineffectiveness claim lacks arguable merit, there was no reason for counsel to seek the instruction, and [Sherwood] was not prejudiced from counsel's inaction.

PCO at 30. We agree. Mother was charged with a crime based upon her own actions, leaving the victim with Sherwood when she knew he could pose a danger to the child. She was not an accomplice. Counsel cannot be deemed ineffective for failing to request a jury instruction that was inapplicable. ***See Spotz, supra***, 18 A.3d at 299 (holding that counsel cannot be deemed

---

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

ineffective for failing to request a jury instruction he "was not entitled to and did not request"). This issue will not garner Sherwood relief.

**(6) The PCRA court committed reversible error by denying Sherwood's claim that his due process right to a fair trial was violated where the trial court was aware of sleeping jurors during both the guilt and penalty phases and failed to make any inquiry or take corrective action and counsel was ineffective for failing to object to the court's inaction**

In his final claim, Sherwood maintains that two jurors in his trial were sleeping at various times, that the trial court didn't do anything about it, and that counsel was ineffective for failing to act. This claim also will not provide Sherwood with relief.

Sherwood maintains that, on the last day of the guilt phase of his trial and again on the first day of the penalty phase, jurors were sleeping. Counsel raised this issue at the time with the court:

> [Sherwood]:      I would like to put on the record that Jurors Number 3 and 5 have not only yesterday but today been sleeping significantly. And may I suggest, you know, a stand and stretch. That is what I'm looking for.

> [Commonwealth]: The witness has been rambling on. I have noticed jurors close their eyes, but I think they are listening. You know, counsel, this witness is rambling terribly. And it is really, I'm making an effort to listen to her, but it is very difficult to listen to her.

> [Sherwood]: This person's life is at stake. All I'm asking for – I don't want to take on his ramblings and his characterizations and all that stuff, I want them to listen. I think a stand and stretch is appropriate.

> [Commonwealth]: I have no objection to that.

N.T., *supra*, at 1507-08. The court then ordered the jurors to take a break, stand, and stretch. *Id.*

In the PCRA court's opinion, it stressed that Sherwood failed to demonstrate all three prongs of the ineffectiveness test with respect to this claim. PCO at 36. The court noted first that D.A. Rosini stated both at trial and during the PCRA hearing that the jurors in question were not asleep, but were listening with their eyes closed. *Id.* The court added that "there is no evidence that jurors 3 and 5 were sleeping" during Sherwood's trial, and that Sherwood's statements to the contrary are speculation. *Id.* Thus, the PCRA court determined that this issue did not have arguable merit.

Moreover, with respect to the second ineffective assistance prong, whether counsel had a reasonable basis for not taking the action suggested, the PCRA court held that trial counsel's request that the jury stand and stretch, and not ask for additional relief, was proof of a reasonable strategy. "[T]rial counsel's decision to not request more action from the court may have been a trial strategy as to not antagonize the jury, or that counsel did not believe the issue had merit, as D.A. Rosini believed." *Id.* The PCRA court concluded that, without Sherwood supplying proof that he was prejudiced, the fact that a juror may have been sleeping through portions of a trial will not require relief. *Id.* The PCRA court cited *Commonwealth v. Lawson*, 762 A.2d 753 (Pa. Super. 2000) in support.

In **Lawson**, after being convicted of murder and other offenses, Lawson asserted on appeal, *inter alia*, that his counsel was ineffective for failing to seek the removal of a juror in his case who fell asleep. In evaluating this issue, the court stated:

> Even if a juror slept through portions of the trial, appellant has failed to show that he suffered prejudice. Appellant does not state what portions of the trial the juror allegedly slept through. Further, the Commonwealth presented ample evidence to convict appellant. Appellant did not demonstrate that but for the sleeping juror, the outcome of the trial would have been different. Here, appellant has not shown that he suffered actual prejudice; therefore, his claim for ineffective assistance fails.

*Id.* at 758. We find this analysis persuasive. Sherwood has done nothing more than speculate that juror 3 and juror 5 were actually sleeping. He has failed to demonstrate that the outcome of his trial would have been different if his attorney had requested more than a stand and stretch moment during trial. To sustain a claim of ineffectiveness, Sherwood must prove that the strategy employed by trial counsel "was so unreasonable that no competent lawyer would have chosen that course of conduct." **Chmiel, supra**, 889 A.2d at 540-41. Sherwood has not so proven here. Accordingly, the PCRA court's finding that Sherwood had not established ineffective assistance of counsel in this respect is correct.

### *Conclusion*

Based upon the foregoing, we find that the PCRA court erred in finding that Sherwood had suffered cumulative prejudice due to counsel's failure to cross-examine Mother about her cooperation agreement with the

Commonwealth and about the specific incidents of abuse found in the CYS files. Moreover, we find that the PCRA court did not err in denying to grant relief on Sherwood's remaining claims of ineffective assistance. Accordingly, we must reverse the award of a new trial in this matter, and otherwise affirm the denial of PCRA relief.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/22/2026